## MRS. J. C. FURR *v.* BENJAMIN F. SPEED.

1. SLANDER. *Words actionable per se. Poisoned.*

    To charge the defendant with having poisoned the plaintiff is actionable *per se.*

2. SAME. *Peremptory instruction.*

    If there be a conflict of evidence as to whether the words charged in an action for slander were spoken, it is proper to refuse a peremptory instruction for the plaintiff.

3. SAME. *Damages.*

    It is not error, in an action for slander, to refuse plaintiff an instruction to the effect that proof of damage is unnecessary, when the same fails to state that the jury must believe that the slanderous words were spoken by defendant.

4. SAME. *Intention.*

    Both intention to injure and damage are implied by law from the speaking of words which are slanderous *per se.*

5. SAME.

    If the defendant is shown to have charged plaintiff with having poisoned him, an instruction that before plaintiff can recover, the jury must believe that defendant spoke the words with the intent to say that the plaintiff intentionally poisoned him, is erroneous.

6. SAME. *Proof.*

    A recovery in an action for slander can be had only where the words charged, or synonymous words, are proved to have been spoken.

FROM the circuit court of Lincoln county.

HON. J. B. CHRISMAN, Judge.

The facts are sufficiently stated in the opinion of the court.

The seventh instruction, given at plaintiff's request, which is referred to, in the opinion of the court, is as follows:

"7. The court instructs the jury, for the plaintiff, that in an action for slander, the law implies damages from the speaking

of the words which accuse the plaintiff of crime, and, also, that the defendant intended the injury which the slander was calculated to effect; and, in this case, if the jury believe, from the evidence, that the defendant is guilty, as charged in the declaration, then they are to determine, from all the facts and circumstances proved, what damages ought to be given, and the jury are not confined to the mere pecuniary loss or injury sustained."

The instructions given for defendant, referred to in the opinion of the court, are as follows:

" 3. The court further instructs the jury, for the defendant, that unless they believe, from the evidence, that the defendant intended, by what he said, to charge the plaintiff with intentionally administering poison to him, with intent to kill and murder him, then they will find for defendant.

" 4. The court instructs the jury, for the defendant, that if they believe, from the evidence in the case, that Speed did not intend to impute anything wrong to plaintiff, and that all Speed said was, that he believed he was poisoned in the coffee, and that he did not charge that Mrs. Furr put the poison in the coffee, or knew it was in the coffee when she gave it to him, then they will find for defendant.

" 5. The court further instructs the jury, for the defendant, that before any recovery can be had in this case, the plaintiff must establish, by a preponderance of the evidence, that the defendant perpetrated the slander complained of in the declaration, and if, from all the evidence in the case, the jury are unable to determine whether he did say *so* or not, then they will find for defendant."

The other instructions are sufficiently stated in the opinion.


*R. H. Thompson*, for appellant.

The peremptory instruction asked by the plaintiff should have been given. This I predicate of the evidence of the defendant himself. Speed testified that, after dining at the plaintiff's table and leaving the premises, he said to several persons " that

he believed that he had been poisoned, and that he believed the poison was in the coffee, and that Mrs. Furr, the plaintiff, gave him the coffee.'' This language, without explanation or qual- ification, is libelous *per se.* The natural import of these words, unexplained and unqualified, is to impute crime. If Speed was not willing for this implication to be received by his hearers, he would have added something to the effect that he did not think the good woman knowingly or intentionally poisoned him. This he did not do, and, it will be noted, in his evidence he no- where states his belief to be that plaintiff was innocent in the matter. It will be seen from the authorities that the words averred in the declaration, and proved on the trial by plaintiff's witnesses, "Mrs. Furr poisoned me," are actionable *per se.* *Gardner* v. *Spurdant,* Cro. Jac., 438.

Townsend on Slander and Libel, sec. 168, says: "A general charge of being a murderer, or of having killed another, is ac- tionable. Thus, held actionable to say, 'Thou hast killed a man,' 'You killed my brother,' 'You killed one negro and nearly killed another,' 'George Burton is the man who killed my husband,' 'I will call him in question for poisoning his own aunt, and make no doubt but to prove he hath poisoned his aunt,' '' etc. Even had the words been "I believe Mrs. Furr poisoned me,'' they would have been actionable. See Starkie on Slander, vol. 1, pp, 68, 69, top p. 60, where the following words were held actionable: "A woman told me that she heard one say that Meggs, his wife, had poisoned Griffin, her first husband, in a mess of milk.''

When Speed said "that he believed he had been poisoned, and that he believed that the poison was in the coffee, and that Mrs. Furr gave him the coffee,'' he substantially said, he surely left a legitimate inference, that "he believed Mrs. Furr poisoned him.'' To have so stated—to have used these words —would have made him liable. It is actionable for one to say that he supposes or thinks or believes another to be guilty of a crime. Townsend on Slander and Libel, sec. 163; Starkie on

Slander, vol. 1, p. 64, top page 56; *Miller* v. *Miller*, 8 Johns. (N. Y.), 74; *Waters* v. *Jones*, 3 Port., 442 (29 Am. Dec., 261); *Giddens* v. *Mirk*, 4 Ga., 364; *Logan* v. *Steele*, 1 Bibb, 593, s. c. 4 Am. Dec., 669; *Nye* v. *Oatis*, 8 Mass., 121, s. c. 5 Am. Dec., 79.

The court surely erred in giving the instructions which were granted at defendant's request. Read the first one. It says to the jury that, before the plaintiff can recover, they must be satisfied from the evidence not only that defendant had spoken the words "Mrs. Furr poisoned me," but that the words were so spoken with the intent, and that defendant meant thereby to say that Mrs. Furr intentionally poisoned him, and was guilty of an attempt to kill and murder him, and unless such—that is, the intent—is established by a preponderance of the evidence, plaintiff could not recover. In other words, this is flatly in the face of the authorities above cited. Townsend, sec. 168; Starkie, vol. 1, pp. 68, 69, top page 60. I will ask the court to examine the cases cited in the notes to Townsend, sec. 168, and apply the authorities to the present question. "Thou hast killed a man" does not necessarily imply a crime. It might be done justifiably or accidentally, and yet the words are actionable when spoken without explanation or qualification, and so of the other instances given in the section cited. It is not necessary, to make words actionable *per se*, that they should necessarily imply a crime. It is sufficient that they naturally carry the imputation. The words "Mrs. Furr poisoned me" naturally import crime. They are actionable *per se*, as shown by authorities cited. The instruction deals with them as if they were not so actionable.

The third instruction given defendant is subject to the same objections, and is, if the thing be possible, even more erroneous. These instructions submit to the jury as a question of fact what the court should have decided as a matter of law; whether the language was actionable did not depend upon any other intent than the one which the law places on words which are action-

able *per se;* the law conclusively fixes their meaning.　The only question of intent involved in such case is the intent to speak the words; if that intent existed, it is immaterial whether the speaker intended, willed, the consequences of the publication. Townsend, ch. 5, secs. 60–92.

The speaking of actionable words to the plaintiff in the presence of other persons is a publication.　Townsend on Slander and Libel, sec. 107, p. 151.　It will be noted, too, that, in the conversation with Mrs. Furr, Speed was charged with other publications, and, according to plaintiff's evidence, did not deny the charge.

The fifth instruction given for defendant is misleading.　Too much importance is given the little word "so."　Why the court should have given *so* much significance to *so* small a word as "so" is beyond finding out.

*Cassedy & Cassedy*, for appellee.

The suit being a common law action, and the words spoken being in "plain and ordinary language, in common use, not ambiguous or doubtful," "under such circumstances the jury are the judges of the meaning and intent of the words."　*Jarnigan* v. *Flemming*, 43 Miss., 720.　The words used might have been sufficient to sustain a case founded upon the statute for actionable words, but not a case at common law for slander.

In the case of *Crawford* v. *Melton*, 20 Miss., 328, the words used were "C swore a lie, and I can prove it," and the court held the words to be within the statute, but not actionable at common law.　There is just as much reason to contend that the words used in that case imputed to the plaintiff the commission of a felony as in this case, and more.　In the last case cited, while swearing to a lie would seem that the person so transgressing was guilty of a crime, yet, in order to commit perjury, the party must knowingly swear to a lie, and his testimony must be upon some question material to the issue being tried, and he must have been sworn to tell the truth by an offi-

cer authorized to administer an oath. We submit that the words themselves used in this case are not *per se* actionable at common law, nor are they actionable taken in connection with the other evidence in the case.

The instructions for the defendant are not erroneous unless the court erred in refusing the peremptory instruction, for they merely inform the jury that they must believe that Speed intended to charge Mrs. Furr with intentionally poisoning him and being guilty of an attempt to kill, and that such fact should be established by a preponderance of the evidence. If the words used were not actionable *per se*, then the instructions were proper. Words spoken in answer to a question directed by the plaintiff herself, in the presence of the other ladies, would not amount to a publication of the slander, and, if the plaintiff relies on this alone to sustain her case, she should go with the answer that she had provoked the speaking of the words, and cannot, therefore, avail herself of the advantage gained.

STOCKDALE, J., delivered the opinion of the court.

This is an action of slander brought by appellant (plaintiff in the court below) against appellee (defendant in the court below) to recover damages for injury to character by the speaking and publishing, as is alleged, of slanderous words by appellee of and concerning appellant. The complaint charges that appellee said of appellant, " Mrs. Furr poisoned me," to which the defendant pleaded " Not guilty." On the trial, plaintiff testified that appellee took dinner at her house on one occasion, and she passed him a cup of coffee, and her husband helped his plate. Mr. Speed soon rose from the table, threw the food out of his mouth, said he was sick, and after awhile left the house and premises. Some time after that she heard that he had told in the neighborhood that she had poisoned him. She went to his house, and asked him what grounds he had for believing that. He said he felt like he was poisoned. She asked him what grounds he had to believe that she had

poisoned him.    He replied:  '' I am sorry to say it, but if I had
taken another sip of that coffee I would have died on the spot;''
and that she had poisoned him.    This conversation was wholly
addressed to Mrs. Furr, but in the presence of two witnesses
that were with her, according to the testimony of plaintiff, and
they corroborate her.    Albert D. Moore testified that in 1892
Mr. Speed (appellee) told him that he (Speed) had just come
from Mr. Furr's, and he believed that he was poisoned, and
that he got the poison in the coffee which was given him for
dinner at Furr's.    Defendant testified in his own behalf that
on the occasion referred to he took dinner at Mr. Furr's, and
Mrs. Furr passed to him a cup of coffee.    He took a sip or
two of it, and it made him violently sick.    After leaving there,
he told a number of persons that he believed he had been poi-
soned, and that he believed the poison was in the coffee, and
Mrs. Furr (the plaintiff) gave him the coffee; that he had never
said to anybody that Mrs. Furr poisoned him, nor that he be-
lieved she had poisoned him; never charged Mrs. Furr with
poisoning him.    The most he ever said was that the coffee made
him sick, and he believed it had poison in it.    He denied the
conversation at his house with Mrs. Furr as related by her and
the other two witnesses.    He made no declarations that Mrs.
Furr had poisoned him, nor admissions that he had ever so
stated.    This testimony having been submitted to the jury,
they found a verdict for defendant.    The plaintiff moved for
a new trial, and the motion was denied, after being considered
by the judge under advisement.

The plaintiff asked a peremptory instruction, which was re-
fused by the court, and plaintiff excepted.    We think this
instruction was properly refused.    There was conflicting testi-
mony in the case sufficient to preclude a peremptory charge.
Plaintiff then asked a number of charges, which were given,
No. 2 of which is in the following words, to wit:  '' If the jury
believe from the evidence that Speed said to Mrs. Furr, in the
presence of other persons, that Mrs. Furr had poisoned him,

or that he believed she had poisoned him, then they will find
for plaintiff.'' The fifth instruction given at the instance of
plaintiff charges that ''if they believe from the evidence that
the defendant said of and concerning the plaintiff that Mrs.
Furr poisoned him, or words to that effect, they must find a
verdict for plaintiff.'' It is not necessary to pass upon the
legality of the modification by the court of instruction No. 3,
asked by plaintiff. It was manifestly erroneous as asked. The
court was asked to charge the jury that it was unnecessary for
plaintiff to show affirmatively that she had really suffered dam-
ages, but without such proof she is entitled to recover such
damages, etc., without stating that ''if they believe the slan-
derous words were spoken;'' nor do the subsequent words cure
the defect. They only furnish the jury the means of meas-
uring the amount of damages after the right to recover had
been announced. The fourth instruction given at the instance
of plaintiff seems to have been drawn rather broadly. While
it is true, as stated, that it is not necessary to plaintiff's recovery
that she should prove every averment of the declaration, it is
giving too much latitude to say, '' If she has proved her case
substantially.'' This court said, in *Fritz* v. *Williams*, 16
South., 359, by Justice Whitfield, after an extended review of
cases on the subject: '' The rule in *Jones* v. *Edwards*, 57 Miss.,
28, is the better one, meaning what Mr. Odger says, and what
it plainly shows upon its face it means, that 'synonymous
words,' conveying the same specific idea—the same identical
thought—will do.'' And that is as far as this court has gone
in relaxation of the old rule requiring the precise words charged
to be proved in order to recover. The law is properly announced
in charge No. 7 for plaintiff.

These instructions, with others, given for plaintiff, brought
the case to a single point for the jury to determine, to wit:
Did the defendant speak the words charged in the declaration,
or synonymous words conveying the same specific idea, the
same identical thought? If the words charged in the declara-

tion, and others as testified to by the witnesses for plaintiff, were spoken and published, they are actionable.　The defendant met the charge by a straight denial that such words were spoken, and, if that were correct, then there is no cause of action in this case.　To enable the jury to arrive at a correct conclusion on that issue of fact (the court having charged the jury at the instance of plaintiff), the defendant presented instruction No. 2, in the record, which was given, charging the jury that no recovery could be had in this case unless the exact words alleged, or synonymous words, had been spoken by the defendant. Words of synonymous meaning, conveying the same specific idea, is, of course, what the court meant by the language of that instruction, and we do not think there was error in giving it.　Nor do we find error in the granting of the fourth instruction asked by the defense.　Plaintiff's seventh instruction informs the jury that the law implies both intention to injure and damage from the speaking of slanderous words.　Defendant's instruction No. 2, informs the jury that if the words upon which the law so presumes damages and bad intention were not spoken at all, then these presumptions will not exist; and defendant's fourth instruction is, for similar reasons, free from objections. Nor do we find error in the giving of the fifth charge for defendant, and, had the case been tried with the same result upon those instructions, above referred to in this case, the verdict would not now be disturbed.　But, in addition, instructions Nos. 1 and 3, asked by defendant, were given to the jury, both of which are objectionable, and may have had weight in shaping their verdict.　The authors on the subject of slander concur that no general rule can be laid down by which to determine what words or phrases will support an action for libel or slander; so much depends on the attending circumstances of each case. Starkie, in his work on slander (section 55), quotes from the opinion in the early case of *Button* v. *Heyward*, 8 Mod., 24, by Chief Justice Pratt.　An action was brought against Mrs. Heyward for speaking the words: "I know the man that killed

my husband; it was George Button," her first husband being dead. Those words were held to be actionable. The lord chief justice said: "We are to understand words in the same sense that the hearers understand them. We ought to expound words according to their general signification, to prevent scandals. It is the duty of the jury to construe plain words and clear allusions to matter of universal notoriety, according to their obvious meaning, and as everybody who reads must understand them." Lord Mansfield, in *Rex* v. *Horne*, Cowp., 680; *Hume* v. *Arrasmith*, 4 Am. Dec., 626, "the use of such words and signs as do, in effect, injure the reputation of an individual, are within the mischief; the grievance is the loss of character." Starkie, Sland. & L., p. 60, sec. 60. Guided by the above announced doctrine, it has been held slander to say, "I will call him in question for poisoning his aunt, and make no doubt to prove he has poisoned his aunt." And the words were held to be actionable. Townsh., Sland. & L., sec. 68. A general count in an action for slander—as, charging the plaintiff with stealing—is good. *Nye* v. *Otis*, 5 Am. Dec., 79. The books abound with instances where similar phrases and of similar character, published by writing or voice, were held to be actionable. Had the words alleged in the complaint in this cause, "Mrs. Furr poisoned me," and those testified to by the plaintiff's witnesses, "I am sorry to say it, but you did poison me, and, had I taken another sip of that coffee, I would have died on the spot," been among these enumerated cases, we do not see why they would not have been in proper company. Poisoning was and is a crime at common law and by statute—murder, if death ensues; attempt to murder, if death does not follow—and to charge either crime upon any person by any expression generally and commonly understood by the persons addressed, constitutes the wrong, and the words are actionable. See authorities cited above. To say a man swore falsely, or swore a lie, the words are not actionable; but if one say of another, "He committed perjury," the words are actionable, because the words

"themselves, as generally understood, impute an infamous crime;" and it would be error to instruct the jury that they must believe, from the evidence, that the speaker intended to charge thereby, by name, all the ingredients that constitute perjury before recovery could be had.   The word "perjury" is known to mean an infamous crime in common parlance, and, when charged by a name that conveys to the hearers the idea that one is guilty of that crime, the damage is done as effectually as though charged in the elaborate phraseology of an indictment.   Judges and lawyers themselves use the descriptive terms "perjury," "murder," "arson," etc., to designate those crimes, and on the docket of the court they are so used.   In most of the states of the American Union, including Mississippi, as well as in England, the enlightened doctrine is maintained that people are entitled to protection against the slanderer in their good name as well as in their profession and business reputation and their property, and the humble as well as the great can invoke it.

In view of the authorities cited, and numerous others which we have examined, it was error in the court below to charge the jury as asked by defendant in instructions Nos. 1 and 3, wherein, by No. 1, the jury are charged: "That before any recovery can be had in this action, the evidence must satisfy the jury, not only that the defendant said that Mrs. Furr poisoned him, or words of synonymous character, but it must be established, further, that the words were so spoken by the defendant with intent, and that he meant thereby, to say and publish that Mrs. Furr intentionally poisoned him, and was guilty of an attempt to kill and murder him by poisoning him, and, unless such is established by a preponderance of the evidence, the jury will find for the defendant." Instruction No. 3 corroborates No. 1, and is erroneous.

We do not concur in the expression of counsel for appellant to the effect that if the words spoken, or alleged to have been spoken and published by defendant, were actionable *per se*, a peremptory instruction ought to have been given for plaintiff.

The plaintiff and her witnesses testified to certain words spoken to her in presence of third persons, which words are actionable, if so spoken. The defendant, in his sworn testimony in the case, denied that such words were spoken at all, but another set of words, and those only, were spoken. That was the issue before the jury, raised by the plea of not guilty to the declaration. The jury had the right to believe the one or the other, and with that conflicting testimony in the cause the court could not give a peremptory instruction, but must allow the jury to find on the facts. The jury, by their verdict, indicated that they believed the case was not made out, but how much weight the two erroneous instructions had upon their minds in aiding them to arrive at that conclusion is not known, but it is fair to presume that those vigorous utterances may have materially influenced their judgments, and, much as we dislike to disturb a verdict where two trials have been had reaching the same result, we do not think a verdict should be allowed to stand, where vital principles of public policy are involved, until the record shows a perfectly fair trial with the law properly announced. We think that the motion for a new trial should have been granted for the reasons above stated.

*The judgment of the court below is reversed, a new trial granted, and the cause remanded.*