Doherty *v.* L. B. Price Mercantile Co.

[95 South. 790. No. 22688.]

1. Libel and Slander. *Language clearly imputing embezzlement actionable per se; damage implied from spoken words slanderous per se.*

Language which clearly imputes that one is guilty of the crime of embezzlement is actionable *per se*, and damage is implied by law from the speaking of words which are slanderous *per se*.

2. CORPORATIONS. *Liable for slanderous words of agent within scope of employment and unnecessary to show corporation's knowledge or ratification.*

A corporation is liable for slander uttered by its agent, acting within the scope of his employment and in the performance of his duties touching the matter in question, and in such case it is unnecessary for a plaintiff to show that the slanderous words were spoken with defendant's knowledge or with its approval, or that it ratified the act of the agent.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Suit by B. O. Doherty against the L. B. Price Mercantile Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

*Robert L. Bullard,* for appellant.

The several instructions granted the defendant contain four erroneous elements, viz: 1. They submit to the jury as a controverted fact to be found by them on the evidence whether or not the words alleged to be slanderous were spoken by Hohmeyer, when the same was not disputed but was admitted by Hohmeyer to be true. 2. They contradict the legal principle that damage is implied from the speaking of words slanderous *per se* and inform the jury that actual damage must be proved before the plaintiff could recover anything. 3. They inform the jury that before the plaintiff can recover they must find that the defendant actually employed Hohmeyer to slander the plaintiff, or specifically authorized him to do so, and, 4. The instructions invite the jury to find that the slanderous words were not spoken by Hohmeyer in the line of his employment, when it is admitted that he was in the very act of trying to secure a settlement of account between the plaintiff and the defendant, and the statement or threat was made for the very purpose of coercing the settlement, the defendant now says without reservation, that Hohmeyer is satisfactory to them.

1. As to the first proposition, it is as vicious to assume by instruction that an undisputed fact is disputed and thus subject to finding by the jury, as to assume as proved a disputed fact.

The instruction appearing on page 6 is in these words: "The plaintiff cannot recover on account of anything done or said by H. K. Hohmeyer to the plaintiff except on account of the language set out in the declaration, and not then unless they believe that the said H. K. Hohmeyer spoke the language set out in the declaration as spoken by him." Let this instruction be considered in connection with the following question asked by the defendant's counsel to Hohmeyer, the defendant's manager and witness, and his answer thereto, viz: "Q. Mr. Doherty complains against the company that you threatened to have him arrested and put in jail for embezzlement, unless he signed some receipts; Did you do that? A. I did." (Bottom of page 4 and top of page 41, Steno. notes). In all the other instructions the speaking of the words was submitted to the party. This was the submission of a false issue and was erroneous.

See the following authorities: 1 Blashfield on Instructions to Juries, sec. 36, wherein it is said: "It is the province of the jury to determine the existence or non-existence of disputed facts, but it would be absurd to allow or require them to pass upon facts as to which there is no dispute, and which are admitted by the parties. Accordingly, instructions are held to be erroneous which treat as an issue and submit to the jury facts which are admitted by the pleadings, or upon the trial."

28 Cyc. 1671—"A requested instruction which assumes that the existence of such facts is an open question is properly refused, and the giving of such instructions is erroneous."

Cited in support of the last clause of the foregoing quotation is *Southern Ry. Co.* v. *Vaughn*, 86 Miss. 367, 38 So. 500, in which this court said: "It is conceded that, if the appellant transported the machine and delivered the same

to its connecting carrier without unreasonable delay and in good condition, its responsibility for the machine ceased, so far as this suit is concerned, with said delivery. This is expressly recognized by the instructions granted for appellee, which predicates recovery solely upon the theory that the railroad company negligently failed to deliver the machine to its connecting carrier. The same legal proposition is correctly stated in the instructions granted the appellant. But in the face of the express and uncontradicted admission as to the prompt transmission and delivery, in good order by appellant, there was no conflict of testimony as to the vital point in the case, no proof of any negligence on the part of appellant, and consequently nothing on which to base an instruction."

This would seem to leave nothing further to be said here. But for the fact that it was necessary, if such is true, to submit for the jury to find, "and that he meant thereby that the plaintiff was guilty of embezzlement, and if said words were heard and so understood by others," the plaintiff was entitled to a peremptory instruction upon the whole case. It is certainly reversible error to submit for them to find, as a disputed fact, that the words were spoken or not spoken.

2. There was a fatal conflict in the instructions which left the jury with no rule to guide them as to question of damage. At the request of plaintiff the jury had been instructed, "The law implies both malice and injury from the speaking of the slanderous words."

In plaintiff's instruction on bottom of page 6, this is flatly contradicted. The jury are informed "even though you might believe from the evidence that the plaintiff was told by H. K. Hohmeyer that unless he signed the receipts that Hohmeyer would have him arrested and put in jail for embezzlement, yet the plaintiff cannot recover (notwithstanding the words from the speaking of which the law presumes damage) unless he has proved damage sustained by such statement, and unless the plaintiff has proved damages by a preponderance of the testimony, it is the sworn duty of the jury to find for the defendant."

That the law presumes damages sustained from the publication of words slanderous *per se* needs no citation of authority, yet by this instruction the jury are told that he cannot recover because of any such presumption, but only if he has proved damages sustained by such statement."

Because there was no evidence to prove any specific damage, nor any damage other than that which the law always presumed in like case, the jury were instructed to find for the defendant outright, and they did so.

3. One of the most vicious instructions is the one on page 8. It requires of the jury to find for the defendant "Unless they believe from the evidence that the defendant hired or employed Hohmeyer as its agent to quarrel, dispute and fight with plaintiff, and to accuse him of embezzlement—or that quarreling, disputing, fighting and accusing the said B. O. Doherty of embezzlement—was within the scope of the labors and duties for which the defendant hired the said H. K. Hohmeyer, then, under the law, it is the duty of the jury to find for the defendant."

The jury are here told that the evidence must show that Hohmeyer was actually employed by the defendant to slander Doherty. In other words they must find from the evidence that a failure on the part of Hohmeyer to "quarrel," "dispute" and fight with plaintiff, and to slander him, was a failure to do his duty under his employment. Whatever else it was his duty as an employer to do, it must also have been his duty to slander plaintiff before he can recover. They must find that to accuse Doherty of embezzlement was within the labors (was one of them) which the defendant hired the said Hohmeyer to do."

This was requested by counsel and granted by the court with the case of *Rivers* v. *Y. & M. V. Ry. Co.,* 90 Miss. 196, 43 So. 471, under their very eyes. All through the case and in the very instructions, it is assumed that the words were spoken by him in the act of trying to secure a settlement, and for the very purpose of hastening it. He admits that he said: "If you don't sign these receipts and pay that money (to his employer, for whom he was acting) I will

have you arrested and put in jail for embezzlement." If he spoke the words at all, and he admits he did, he spoke them in furtherance of his master's business.

Of course there was no evidence that the defendant had hired Hohmeyer to slander plaintiff, and when the court directed the jury to find for the defendant unless they were convinced of that by the evidence, they could not have found any other verdict without disobeying the instructions of the court.

4. The instructions are erroneous in another particular viz: they submit another admitted fact to the finding of the jury. It is not only admitted that Hohmeyer spoke the word, but that he was in his master's office, engaged about his master's business, when he did it, and in the act of doing it. The authorities showing that the submission of this question to the jury was error have already been cited and they will not here be repeated.

The instruction covering page 9 offends against each of the three principles already discussed. It assumes that the jury finds that the plaintiff and Hohmeyer "engaged in a dispute, quarrel or controversy about the account or business relations between the plaintiff and the defendant, the L. B. Price Mercantile Co.;" that Hohmeyer did state "that unless the plaintiff paid the sum of seven dollars claimed by Hohmeyer to be due the defendant, the L. B. Price Mercantile Co." he would make a charge of embezzlement against him. After assuming that the jury would find that the charge of embezzlement was made in and about a controversy over the account between plaintiff and defendant, and as the alternative of the plaintiff's failure to pay what the defendant claimed, then the instruction invites the jury to find the exact converse of what they have already found, that the charge of embezzlement was not made as part of the controversy over the account, but, "as a retorted reply to statements (what statements I wonder) made by the plaintiff. The remainder of the instruction again invites the jury to find against the admission that the charge was made in connection with

the controversy over the account. It remains now but to notice an instruction appearing at the bottom of page 7, it is an anomaly; has not been classified because it cannot be.

After the defendant had admitted that Hohmeyer charged the plaintiff with embezzlement in connection with an account defendant claimed plaintiff owed, the court, solemnly instructs the jury to find for the defendant solely upon the fact, if they find it to be a fact, that Hohmeyer also told the plaintiff that he thought the company could prefer a charge of embezzlement against him, such statement, if made by Hohmeyer, was sufficient in itself to support the action. In stating that the company could make a charge of embezzlement was equivalent to charging plaintiff with guilt of the charge. But if not it was strongly corroborative in plaintiff's favor, and yet the jury are required to render a verdict for the defendant on that alone.

Upon the record as a whole it is evident the verdict was produced by the erroneous instructions of the court. There is no question of fact to be passed upon by the jury except the amount of the damage and we respectfully submit that the judgment of the lower court ought to be reversed and the cause remanded to assess the damage, or for a new trial.

*Currie & Currie,* for appellee.

First: We call the court's attention to the fact, as it will observe on reading the same, that the declaration in this case is a common-law declaration sounding in slander.

Second, we call the court's attention to the fact as it will also observe upon reading the record, that the L. B. Price Mercantile Company, is a corporation, and this being true, the statute of our state on actionable words does not apply. In the case of *Dixie Fire Insurance Company* v. *Betty,* 101 Miss. 880 and 58 So. 705, this court said: "Over the objection of appellant appellee was permitted to amend his declaration by a count predicated on section 10 of the Code of 1906, by which certain words are made

actionable. In so doing the court committed fatal error. This section has no application in the suit to hold a principal liable for words spoken at the command of the principal as to which we express no opinion. Its language, together with the fact that its first appearance in our statutes was as section 9 of the Act (Rev. Code of Laws, 1824, ch. 50) demonstrates that its enactment was for the purpose of preventing difficulties, and that, consequently, it applies only to persons liable to become involved in such a difficulty by reason of having referred to another in words of the character therein mentioned."

The proof in the case, as the court will observe from the record, not only shows the appellee did not direct Agent Hohmeyer to address the remarks complained of to the appellant, but on the contrary shows conclusively that the appellee had no knowledge at the time of the controversy between its said agent and the appellant.

Further, if the appellant can show a cause of action at all, he will have to do so under the principles of the common law strictly. Now, the foregoing being true, did the appellant prove a cause of action against the appellee, a corporation under the common law?

To establish a cause of action under the common law the burden was upon the appellant to establish: (a) That the said Hohmeyer actually used the language complained of in the declaration. (b) That the said Hohmeyer was at the time he used said language acting as the agent of the appellee. (c) That said agent in using such language was acting within the scope of his authority. (d) That the accusation of embezzlement against the appellant was not true, but was false. (e) That the alleged slanderous words were published by the said Hohmeyer, that is uttered in a public manner, and in the hearing of the public. (f) That the appellant was actually injured in his good name, fame and credit as a proximate and direct result thereof.

Conceiving the foregoing to be the essential and indispensable elements of the appellant's cause of action under the common law, the appellee put all of the foregoing mat-

ters in issue by the plea of the general issue, which placed upon the appellant the burden of proving by a preponderance of the evidence each and every element of his case.

In addition to the plea of the general issue which joined issue with the appellant on each one of the foregoing material issues, the appellee filed a notice of special or affirmative matter for the purpose of showing and to show that the communication complained of in the declaration, if such words were uttered by the said Hohmeyer, was a privileged communication.

The statute of this state authorized the filing of such a notice containing such matter of defense, and in perusing the record in this case, the court will observe the allegation of fact contained in the notice of special matter and will note that it sets out, among other things, that the appellant, Doherty, and Hohmeyer, the agent of the appellee, were engaged in a controversy pertaining strictly to the business relations existing between them and that in this conversation the appellant, by his own admissions, stated to the said Hohmeyer that he, the said Hohmeyer was a thief and had been stealing his blankets, his spreads, his lease contract and money which he had collected on the same and had not rendered him a fair account of his business transactions; and the court will observe in reading the record that the appellant, Doherty, testified himself that he had called Hohmeyer a thief and had stated to Hohmeyer that he would not work for or under any thief; the court will also observe that Hohmeyer resented these insults just as any man might be expected to do, and had undertaken in a business-like manner to go over the entire account with the appellant Doherty, and show him, Doherty, that he, Hohmeyer, was correct in his statement that Doherty, the appellant, was in error, and the court will observe further from the record that Doherty had quit the employ of the appellee before Hohmeyer used the language complained of, if he ever used the same, in the manner and under the circumstances alleged in the declaration, and that Doherty had repeatedly gone into the

place of business of the appellee where Hohmeyer was, and had there renewed the dispute about the account; and the court will further observe that Hohmeyer had called a policeman to the place of business and had had Doherty removed by policemen in an effort to avoid a controversy and a difficulty with him about the account; and the court will observe further that the only living human being present at the time Hohmeyer used the language complained of by Doherty, and the only person who heard the same, if he ever used any such language at all, were persons carried into the store by Doherty himself, persons who were not employed there, persons who had no business there with the appellee and persons whose only business there was such as was known to Doherty alone; and the court will observe further that the language that Hohmeyer used, if he used the same, was provoked by the insulting statements and remarks of Doherty, and that the words of Hohmeyer, if he used the words complained of, were uttered as a reply and in retort to the insulting remarks and statements of Doherty.

Moreover, the court will observe from the record that Hohmeyer testified that Doherty, the appellant, had collected and failed to account to the appellee for the sum of money which he had demanded and the proof shows that Doherty, the appellant, actually owed the appellee the said item of money.

Even if Hohmeyer made the accusation complained of by the appellant, and if Hohmeyer was acting as the agent of the appellee at the time he made the accusation, and if Hohmeyer was acting within the scope of his authority as the agent of the appellee at the time he made the accusation, yet if the charge was true and not false, under the principles of the common law, the law under which this case must be tried and tested, the appellant would have no cause of action against the appellee.

The only error committed by the lower court, so far as the law in the case is concerned, was its refusal to grant the appellee the peremptory instruction requested.    The

appellant utterly failed to prove the essential elements of his case. He failed to prove a slander. He failed to prove consequent damages, or any damages whatsoever. The whole record shows that the communication was privileged. The correct preponderance of the testimony shows that the charge made by Hohmeyer, if made, was true.

The instructions granted by the court to the appellant and the appellee will be read together and when so read correctly present the law in the case and properly submit to the jury all of the foregoing issues and the verdict of the jury is supported by the overwhelming weight of the evidence and the judgment of the lower court ought to be affirmed.

Cook, J., delivered the opinion of the court.

The plaintiff, B. O. Doherty, instituted a suit for slander against the L. B. Price Mercantile Company, a corporation. The plaintiff was employed by the defendant, corporation, and the declaration in this suit was founded on an alleged oral charge of embezzlement, made against him by the manager of defendant's business in the city of Hatties- burg, Miss., and, from a verdict and judgment in favor of the defendant, this appeal was prosecuted.

It appears from the testimony that the appellee had an office and place of business in the city of Hattiesburg, Miss., and that it was engaged in the sale of certain classes of goods; that H. K. Hohmeyer was in charge of this business as manager, and that the appellant was employed as a salesman; that it was the custom of appellee to deliver its goods to its salesmen to be sold and delivered in the ter- ritory surrounding the city of Hattiesburg, the compensa- tion of the salesman being a commission on the amount of his sales; that the goods were sold for cash or on credit, and it was the duty of the salesman to collect for the goods sold, and to account to appellee for all unsold goods, all money collected, and all contracts for credit sales. It further appears that, after appellant had worked several

132 Miss.—4

months under Hohmeyer as manager, considerable friction developed between them, the appellant claiming shortages in the commissions paid him, and Hohmeyer claiming that appellant had failed to account for all goods delivered to him and all money collected, and that the appellant and Hohmeyer had several conferences in an effort to reach a settlement. Appellee testified that at the last conference between them Hohmeyer demanded that he should pay over certain money and sign certain receipts to the company, and said: "If you don't sign these receipts and give me the money, I will have you arrested and put in jail for embezzlement," and that this language was used in the presence of two people who were in appellee's place of business at the time. Upon this language appellant's cause of action is based.

For a reversal of this cause, appellant relies upon alleged errors in several instructions. The first two assignments are based upon the action of the court, in granting the appellee an instruction which submitted to the jury, as a controverted fact to be determined from the evidence, the question of whether or not the alleged slanderous words were spoken by Hohmeyer, appellee's agent, it being the contention of appellant that the use of the language complained of was admitted.

While in one part of his testimony the witness, Hohmeyer, appeared to admit the use of the language charged, it is not clear from the whole testimony that the witness intended to or did admit it, but, in view of the fact that the case must be reversed on other grounds, we deem it unnecessary to pass upon that question, as this matter can be made clear and definite on another trial.

Appellant next assigns as error instruction No. 3, granted the appellee, which reads as follows:

"The court instructs the jury that, even though you might believe from the evidence that the plaintiff was told by H. K. Hohmeyer that, unless he signed the receipts that he (Hohmeyer) would have him arrested and put in jail for embezzlement, yet the plaintiff cannot recover unless

he has proven damages sustained by such statement, and unless the plaintiff has proven damages by a preponderance of the testimony, it is the sworn duty of the jury to find for the defendant."

This instruction is erroneous and is in conflict with instructions granted the appellant. The language alleged to have been used, and embodied in this instruction, clearly imputes that appellant was guilty of the crime of embezzlement; consequently, it was actionable *per se.* The law presumes damage from the speaking of words which are slanderous *per se,* and it was error to instruct the jury that no damages could be allowed unless the plaintiff had proven damages by a preponderance of the testimony. *Hubbard et al.* v. *Rutledge,* 52 Miss. 581; *Furr* v. *Sneed,* 74 Miss. 423, 21 So. 562.

Appellant next assigns as error instruction No. 6, which is as follows:

"The court instructs the jury for the defendant that, unless you believe from the evidence in the case that the defendant had hired or employed the said H. K. Hohmeyer as its agent to quarrel, dispute, and fight with the plaintiff, B. O. Doherty, and to accuse him, the said B. O. Doherty, of embezzlement, or unless you believe from the evidence in the case that quarrelling, disputing, fighting, and accusing the said B. O. Doherty of embezzlement, if you believe from the evidence in the case that the said H. K. Hohmeyer did accuse the said B. O. Doherty of embezzlement, was within the scope of the labors and duties for which the defendant hired the said H. K. Hohmeyer, then, under the law, it is the duty of the jury to find for the defendant."

This instruction is manifestly erroneous. As said in the case of *Rivers* v. *Yazoo & M. R. Co.,* 90 Miss. 196, 43 So. 471, 9 L. R. A. (N. S.) 931, "the test is whether the slanderous words were spoken by the agent of the company while acting within the scope of his employment and in the actual performance of the duties of his principal touching the matter in question." and "in such case it is unneces-

sary for a plaintiff to show that the slanderous words were spoken with defendant's knowledge or with its approval, or that it ratified the act of the agent."

The same errors as herein pointed out also occur in instruction No. 7 granted the defendant.

For the errors herein indicated, the judgment of the court below will be reversed, and the cause remanded.

*Reversed and remanded.*