KROGER GROCERY & BAKING CO. *et al. v.* HARPOLE.

(Division A. Mar. 2, 1936. Suggestion of Error Overruled, April 13, 1936.)

[166 So. 335. No. 32115.]

Ceylon B. Frazer, of Memphis, Tenn., and Caldwell & Caldwell, of Charleston, for appellants.

230

J. J. Breland, R. L. Cannon, and L. Q. Strong, all of Summer, and Richard Denman, of Greenwood, for appellee.

Argued orally by **Ceylon B. Frazer** and **J. H. Caldwell,** for appellant and by **J. J. Breland,** for appellee.

**Smith, C. J.,** delivered the opinion of the court.

This is an action for slander by the appellee against the appellants, Kroger Grocery & Baking Company and E. L. Jenkins, its agent, in which there was a judgment for the appellee.

The appellants plead only the general issue, but gave notice thereunder that they would introduce evidence that if the words were spoken (1) they were not published; (2) were privileged; (3) were true, and that the speaking of them was justified by the facts and circumstances connected therewith. To this notice the appellee replied that he would introduce evidence to the effect that the words were spoken maliciously.

Two of the appellants' assignments of error only are argued in the brief of their counsel, and this opinion will be confined strictly thereto. These are: (1) The court erred in not granting the appellants' request for a directed verdict; and (2) that certain evidence was admitted over their objection.

In support of their request for a directed verdict, the appellants say: (1) The words alleged to have been spoken were not of a defamatory character; (2) were not published; and (3) if spoken, were privileged.

The appellant Kroger Grocery & Baking Company is a corporation, engaged in operating a number of chain grocery stores, one of which is at Clarksdale, Mississippi, and another at Tutwiler, Mississippi. E. L. Jenkins was the manager of the Tutwiler store, and J. T. Maddox was the supervisor of a number of the stores, among which were the ones at Clarksdale and Tutwiler. The appellee, a young man who became of age after this action was begun, was employed in the Clarksdale store, but was transferred to the Tutwiler store by Maddox, succeeding George Buckner, who had theretofore been employee thereat.

On the occasion hereafter to be stated, appellee says that Jenkins discharged him, and, on his asking the reason therefor, Jenkins replied, in effect, in words, that he (the appellee) had stolen money from the cash register. There was evidence warranting the jury in believing that the transfer was objectionable to Jenkins, and that he preferred retaining Buckner; that on a prior occasion Jenkins had attempted to discharge the appellee, but was prevented by Maddox from so doing; that shortly before the occasion in question, Jenkins told the appellee that the business was not producing satisfactory results, and that he would have to replace him by Buckner; that Jenkins imposed upon the appellee the discharge of duties in excess of those required by his employment.

On the morning of May 2, 1935, Jenkins obtained a letter from the post office, addressed to the appellee, on which there was one cent postage due. This Jenkins paid, and on asking the appellee therefor, he replied that he did not have a cent. Afterwards, on the same morning, the appellee went to a nearby store and purchased a pair of shoes and two pairs of socks. The shoes and one pair of the socks were charged to him, but he paid ten cents for the other pair of socks, giving the seller a twenty-five cent piece, who returned him fifteen cents

therefrom. The appellee carried these articles to the store of the appellants and showed them to Jenkins, and told him what had occurred. Afterwards, on the same day, Ramsey, a porter at the appellants' store, lost a dollar and thought that the appellee had taken it from him. Whether he meant to charge the appellee with wrongfully taking the dollar does not clearly appear. Jenkins asked the appellee if he had Ramsey's dollar; whereupon, according to Jenkins, the appellee became angry, resigned his employment, was paid the balance due him thereon, and left the store. Jenkins denied that he charged the appellee with taking money from the cash register. Jenkins did not know that the appellee had taken money from the cash register, and does not claim that he believed he had.

The appellee's version of what occurred thus appears from his testimony:

"That afternoon between two and three o'clock Mr. Jenkins looked like he had something on his mind and called me and said here, sign the payroll, and I asked what he meant and he said I mean you are fired.

"Q. He said that meant you were fired? A. Yes, sir, and I asked what was the matter and he said this morning I asked you for a penny postage and you told me you didn't have it and you went to the store and bought some sox and paid cash—you gave him a quarter and you got that out of the cash register and bought the sox because I know you didn't have any money this morning.

"Q. Did he say anything about the cash register not checking right? A. He said the cash register had not been checking right lately and you went to the store and bought sox and paid cash and I know you took that out of the cash register.

"Q. What did you say? A. I said I didn't take the quarter out of the cash register and that I had never

taken a quarter from Kroger or anybody and he simply made the remark, 'It's all over.'

"Q. Did you make any explanation as to where you got the money? A. I told him I could show him where I got the money and told him where.

"Q. Did you tell him where you got it? A. Yes, sir."

The appellee then left the store and returned in a few moments with Joe Carter, who told Jenkins that he had given the appellee twenty-five cents on the night before. Jenkins made no comment on this, and made no further investigation of the matter. Later, on the same day, Jenkins reemployed Buckner.

The cash register in appellants' store had not been checking in accordance with the money therein; that is to say, the money therein would sometimes be more and sometimes be less than what the register showed should be therein. These amounts were never large. Maddox testified that this was not unusual, and that the company raised no question relative thereto unless there was a shortage of over a dollar. This discrepancy between what the cash register showed and the money actually therein could happen without any wrongdoing on the part of the persons using it.

The appellants made no effort to prove that the appellee had taken money from the cash register, and the appellee denied having done so. Ramsey was within twenty feet of Jenkins and the appellee at the time of their conversation here in question, and in testifying in behalf of the appellants said this:

"'Mr. Leroy (Jenkins) asked Mr. John (the appellee) if he seen my dollar and he told him he had not seen any dollar and Mr. Jenkins paid him off. Mr. John got mad then and say he wanted Mr. Buckner to work.

"Q. That is what Mr. John said? A. Yes, sir.

"Q. What happened? A. Mr. Leroy paid him off. I don't know exactly what Mr. John said then but Mr.

Leroy asked him where he got the quarter he paid Mr. Steins for sox and Mr. John said he got it from Joe Carter and he went and got Mr. Carter and Mr. Joe Carter come back and told Mr. Jenkins he let Mr. John have the quarter, and told him to let Mr. John go back to work and he told him he would have to see Mr. Maddox.

"Q. Did Mr. Jenkins accuse Mr. Harpole of stealing any more from the cash register? A. No, sir.

"Q. He asked him about it? A. Yes, sir.

"Q. You were present at that time? A. Yes, sir.

"Q. In the store? A. Yes, sir.

"Q. Everyone got mad? A. Yes, sir, both got mad.

"Q. Both talking? A. Yes, sir, about five minutes I reckon."

■ Were the words which the appellee says were used by Jenkins defamatory? The appellants' contention is that they did not impute a charge of larceny. It is true that words merely charging the taking of the property do not of themselves alone necessarily impute a charge of larceny. "But if it appears from the connection in which the charge was made or the circumstance attending its utterance that it was intended and understood to impute the crime of larceny, it will be regarded as actionable per se." 36 C. J. 1208. The connection in which the words "take" and "got" were here used, leads to the conclusion that it was intended to charge larceny thereby; at least the jury could so say. Cf. Louisville & N. R. Co. v. Malone, 200 Ala. 380, 76 So. 296, and Woodville v. Pizatti, 119 Miss. 85, 80 So. 491.

■ Was there a publication? In order for there to have been a publication, the words spoken must have been heard by Ramsey. The appellants' contention is that since Ramsey denies having heard Jenkins charge the appellee with taking money from the cash register, there was no publication thereof. The appellee says that the jury were warranted in believing that the words

were spoken and that Ramsey's denial of hearing them simply made that fact a question for the jury. With this, we agree. There are cases which seem to hold that if the only person who could have heard the alleged defamatory words denies hearing them, there was no publication. On the contrary, other authorities hold that if such person was near enough to hear the conversation and must have heard it, his denial that he heard them presents a question for the determination of the jury. Newell on Slander and Libel (4 Ed.), p. 725. Other authorities to the same effect are cited by counsel for the appellee. It is clear from Ramsey's testimony that he heard this conversation, and if defamatory words were spoken, he heard them.

■ Were the words alleged to have been spoken privileged? The words were spoken in response to a question by the appellee, and about a matter in which both Jenkins and the appellee were interested. They are, therefore, within the rule of privileged communications. This privilege is not here absolute, but is qualified; so that if the privilege was exceeded, specifically if they were not spoken in good faith but were prompted by malice, the privilege disappears. The ordinary presumption of malice from the speaking of defamatory words does not here apply, and for the privilege to be exceeded, malice, in fact, must appear. Malice in fact relates to the state or condition of the mind of a person who speaks defamatory words. It includes an intention to injure, hatred, or ill will, but is not limited thereto, and appears if words of the character here under consideration were spoken wantonly and in disregard of a civil obligation, i. e., if they were spoken recklessly without knowing or caring whether they were true. This is in accord with practically all of the authorities. From what has hereinbefore been said, it will appear that the jury were warranted in believing that Jenkins desired to discharge the appellee in order to re-employ Buckner; that he spoke

the words charged; and that he did so wantonly and recklessly without knowing or caring whether they were true.

There is another fact here present, the effect of which it will not be necessary for us to determine, and that is: The appellants gave notice with their plea of the general issue that they would give in evidence the truth of the alleged words, but they offered no evidence in support of this notice; on the contrary, they denied that the words were spoken. According to some authorities, this is evidence of malice. Odgers on Libel and Slander (5 Ed.), p. 350; Cf. La. Oil Corporation v. Renno (Miss.), 157 So. 705, 98 A. L. R. 1296, and Doss v. Jones, 5 How. 158.

■ Was error committed in the admission of the challenged evidence? Ramsey, who was introduced by the appellants, was recalled by the appellee, after he had been dismissed from the witness stand, and was asked if he did not have a conversation, in Gus Cooley's store, a week or ten days after the appellee left the employment of the appellants, with employees of Cooley, in which he said that "Mr. Jenkins let Mr. John go because he said he took a quarter out of the cash register," to which question he replied, "No." Cooley was then introduced by the appellee and stated that he heard the conversation between Ramsey and his employees. He was then asked, "What did this boy say in your hearing with reference to the reason Mr. John was gone," and he replied, "He said Mr. Jenkins let the boy go because he stole a quarter." This evidence was admitted over the objection of the appellants; the ground of the objection then being:

"We object to that conversation for the reason we don't think this is a matter that could be proven by rebuttal testimony, second, because the boy was not of such agency of the company as to bind the company.

"By the Court: It will be admitted solely for the purpose of contradiction of the witness Ramsey and for no other purpose.

"Mr. Frazer: Note our exception."

The court shortly thereafter adjourned for the night, and when it reconvened the next morning, the appellants again moved to exclude Cooley's evidence "on the ground that it does not contradict the testimony of Ramsey, but is a conclusion of a witness which may have been drawn from any conversation whatsoever and not connected with any conversation he heard May 2nd between Harpole and Mr. Jenkins." This motion was sustained, the evidence was excluded, and the jury were instructed to disregard it. The appellants then requested that a mistrial be entered and the jury be discharged, which the court declined to do.

The appellants' contention is that Cooley's evidence does not disclose that Ramsey made a statement contradictory to what he had testified; that Ramsey's testimony was as to words spoken in a certain conversation, and what Cooley says he told him does not refer to, and may have had no connection with, that conversation. For this reason they say that Cooley's evidence was inadmissible and its damaging effect upon their cause with the jury was not cured, after it had remained with the jury over night, by excluding it and directing the jury to disregard it; citing in support thereof Illinois Central Railroad Co. v. Ely, 83 Miss. 519, 35 So. 873; Yazoo & M. V. R. Co. v. Rivers, 93 Miss. 557, 46 So. 705; Warren v. State (Miss.), 164 So. 234.

We will assume, for the purpose of the argument, that, had a proper objection to this evidence been made when offered, it should have been excluded. The grounds of the objection made when the evidence was offered were: (1) It was not such as should be admitted in rebuttal; and (2) Ramsey was not such an agent of the defendant company as renders it responsible for his declarations. Neither of the grounds of this objection was tenable, for impeaching evidence is, of course, admissible in rebuttal, and the agency vel non of Ramsey was here of

no consequence. The stated grounds of objection did not call to the attention of the court and opposing counsel that the evidence was inadmissible for the reason that it did not contradict Ramsey's testimony. The court below therefore committed no error in overruling the objection, for the rule is that, except where a general objection will lie, objections to evidence must be specific; and "A specific objection overruled will be effective to the extent of the grounds specified, and no further. An objection overruled, therefore, naming a ground which is untenable, cannot be availed of because there was another and tenable ground which might have been named but was not." 1 Wigmore on Evidence (2 Ed.), p. 185; 64 C. J. 191; Alexander v. Eastland, 37 Miss. 554; Bessler Movable Stairway Co. v. Bank of Leakesville, 140 Miss. 537, 106 So. 445.

The court below excluded the evidence, whether rightfully or not, we are not here called on to determine, when a proper objection was made thereto; and, therefore, the appellants have no just cause of complaint. It is not necessary for us to determine whether or not, if the evidence had been wrongly admitted, it is of such character as to bring it within the rule of the cases cited by the appellants.

■ Are the damages awarded excessive? The jury returned a verdict for ten thousand dollars, but on an objection thereto by the appellants, a remittitur of four thousand dollars was entered; and the judgment awarded is for six thousand dollars. No evidence of actual damages was introduced except that the appellee failed to obtain employment on at least two occasions because of the charge made against him by Jenkins. In cases of this character, proof of actual damages is not necessary, and the amount thereof rests in the sound discretion of the jury, unless prompted by passion, prejudice, or corruption. And, in addition, where the words were not spoken in good faith, but were prompted by malice,

exemplary or punitive damages may be awarded. We are unable to say that the court below abused its discretion in permitting a remittitur of four thousand dollars to be entered and rendering a judgment for six thousand dollars. Cf. Gulf Coast Motor Express Co., Inc., et al. v. Diggs (Miss.), 165 So. 292.

Affirmed.