GARDNER *v.* STANDARD OIL CO. *et al.*

(Division A. June 14, 1937. Suggestion of Eerror Overruled July 19, 1937.)

[175 So. 203. No. 32241.]

C. P. & S. H. Long and C. B. Hutchison, all of Tupelo, for appellant.

180

Blair & Anderson, of Tupelo, and G. Garland Lyell, of Jackson, for appellees.

Argued orally by **S. H. Long**, for appellant, and by **G. Garland Lyell**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Appellant, Fletcher Gardner, sued appellees, the Standard Oil Company and C. P. Mattox, for slander, and upon a trial of the case the court below, at the conclusion of the evidence on his behalf, sustained a judgment for appellees, from which Gardner appeals here.

Originally, the declaration was in four counts, but the

first and fourth count were abandoned on the trial, which proceeded on allegations that Mattox, agent and manager of the Standard Oil Company's bulk sales plant at Tupelo, stated to one Ashe, "I am letting Gardner go, the amount of gasoline he took exceeded the amount he charged himself with."

In another count it was charged that Mattox stated to Lude Davis, "I am going to have to let Gardner go. I have been missing some stuff."

These statements were alleged to have been uttered by Mattox falsely and with malice.

The appellees pleaded the general issue, stating that the communications were privileged, and Mattox separately pleaded that the statements or accusations were true.

Without detailing all the evidence, it suffices to say that appellant proved, by Ashe and Davis, the utterances by Mattox alleged in the declaration while in the course of his employment and in the performances of his duties as manager and agent of the Standard Oil Company Ashe and Davis testified that Mattox had several times, and on different occasions, uttered practically the same charges against Gardner before and after the time Mattox discharged Gardner who was employed by the Standard Oil Company as a tank wagon driver delivering oil and gas for appellees to Standard Oil Company's customers, and had been so employed for about eight years. The same statements were testified to by several other employees engaged in the service in and about the plant.

Appellant testified that he was employed at the bulk sales station by Mattox and had worked there under five managers, including the last, Mattox. That Mattox fired him and stated that his reason for so doing was that appellant had been stealing stuff from the Standard Oil Company. Appellant testified that he had, according to the usage and custom of the employees, obtained and charged himself with gasoline and oil, and

likewise had paid therefor according to the custom in vogue at that plant, and he was corroborated in this statement. Appellant further testified that some months prior to his discharge Mattox told him that he (Mattox) was about $300 short with the company and that he wanted appellant to assist him in recouping this by withdrawing from the barrels, with a pump, small quantities of oil until the deficit was covered. Gardner, appellant, declined this proposition, and thereafter until his discharge Mattox required him to work excessive hours, and disregarded the NRA rules as to appellant, but observed the rules as to the other employees. When appellant complained of this supposed injustice, Mattox said to him, "If you can't work it just quit."

It is shown by the evidence that Mattox set a trap to catch Gardner stealing, by having a negro purchase ten gallons of gasoline from Gardner, paying him therefor, and watching to see if he would account for it. Several hours later he reported the sale and said he had forgotten it.

A negro handyman testified that Mattox had made these charges to him and told him to observe Gardner at the noon hour. That Gardner had him put gasoline in his (Gardner's) private car, but witness did not know whether the gasoline was charged or paid for or not.

Pettigrew, a witness for appellant, testified that, on one occasion some months before Gardner was discharged, Mattox said he was going to let Gardner go, that Gardner was taking stuff that did not belong to him. This witness was not then employed, but was told that he could ride with the driver and see if he could learn the business. Some weeks later he was employed. These accusations were repeated by Mattox several times.

On a cross-appeal by the appellees, it is urged that the court erred in not sustaining their plea of a pending suit. This plea is, in effect, that Gardner had sued appellees on this same cause of action prior to the bring-

ing of the action in the case at bar. That case was removed to the federal court, where, on October 1st, there was entered an order of nonsuit, at the conclusion of which are these words, "provided said plaintiff first pay all of the costs of this case, both in the state court and in this court." On October 19, 1934, the present suit in the state court was filed. Gardner did not pay all the costs in both courts until the day the state court heard and considered this plea.

(1) On the cross-appeal, we think the order of nonsuit entered by the federal court deprived that court of any further jurisdiction of the subject-matter or cause of action, and, at all events, the final compliance with the proviso by payment of all court costs completely answers the plea of pending suit.

The general rule is that a state court may take jurisdiction of a case nonsuited in the federal court. 9 R. C. L. p. 213, section 36. Upon dismissal by the federal court, a case is at large. Southern Ry. Co. v. Miller, 217 U. S. 209, 30 S. Ct. 450, 54 L. Ed. 732. We shall not here consider the cross-appeal as to incompetency of evidence, preferring to dispose of it in this main opinion.

(2) On the direct appeal, appellees argue that, by the terms of the written contract between Standard Oil Company and Mattox, the latter was independent and not the agent of the former. The contract in question is stronger for agency than any similar ones we have considered in recent years. Under this contract, the relation of principal and agent, or master and servant, existed between these parties as appellees here. Gulf Refining Co. v. Nations, 167 Miss. 315, 145 So. 327; Texas Co. v. Pete Mills, 171 Miss. 231, 156 So. 866; Gulf Coast Express Co. v. Diggs, 174 Miss. 650, 165 So. 292; and Texas Co. et al. v. Jackson, 174 Miss. 737, 165 So. 546.

(3) Appellant assigns as error the action of the court in excluding his evidence and directing judgment for appellees. The slanderous statements uttered by Mattox to the witnesses, Ashe and Davis, were quasi-privileged.

These alleged defamatory statements were uttered by Mattox while engaged in his own and his principal's business as manager and the only person in Tupelo connected with that business and in charge thereof. They were uttered in an effort to protect the property of his principal and preserve it from theft or embezzlement, and he was accountable to his principal therefor. Relative thereto, he had an interest and a duty. Davis and Ashe were employees and likewise had a duty and an interest relative to the owner's property. Louisiana Oil Corporation v. Renno, 173 Miss. 609, 157 So. 705, and the authorities therein discussed.

These statements being privileged, then the presumption of good faith arises thereasto, and the burden of showing malice or bad faith is cast upon appellant. See Renno Case, supra, citing Newell on Slander and Libel (4 Ed.), sections 346, 394, and 402.

Appellant recognized that the burden was on him to show malice, and he showed many repetitions by Mattox of the slanderous statements. He showed that Mattox required him to work unreasonably long hours, as compared to his fellow servants, and invited him to quit if he did not like the work.

Mattox, in the course of his employment, repeated the slander to Pettigrew before the latter was employed, and when he was under no duty to appellees, nor had any interest in their property. This statement was made by the agent for the principal in the course of the agent's employment, but was not privileged, and was competent as testimony to show malice. See Louisiana Oil Corporation v. Renno, supra. The facts detailed in this paragraph were competent for the jury to consider as to whether they showed malice on the part of Mattox and his corporation principal. See Renno Case, supra; Kroger Grocery & Baking Co. v. Harpole, 175 Miss. 227, 166 So. 335, and also 37 C. J., p. 79, section 488. The last sentence of this section is not adopted by us, because,

in our opinion, the authority cited does not support the text.

The corporation sued here could speak by and through its agents when acting in the course of their employment, and in the performance of their duties, and by this means corporations may be proceeded against for libel and slander. Doherty v. L. B. Price Mercantile Co., 132 Miss. 39, 95 So. 790.

We think there is nothing in the case of Great Atlantic & Pacific Tea Co. v. Majure, 176 Miss. 356, 167 So. 637, at variance with these conclusions. There the slanderous language attributed to the agent was not spoken during the course of such agent's employment. Of course, that kind of statement does not bind the principal, and was not competent against such principal. It was the agent's utterance on his own account for which he could be held liable. On the contrary, that case cogently supports our conclusions in the case at bar.

As we perceive the issue, it was a question for the jury as to whether appellant had offered sufficient evidence to overturn the presumption as to the want or absence of malice and bad faith, the slanderous statements being qualifiedly privileged.

On cross-appeal, the case is affirmed, and on direct appeal is reversed and remanded for another trial.

Affirmed on cross-appeal and reversed and remanded on direct appeal.