SUMNER STORES OF MISSISSIPPI, INC., *v.* LITTLE.

(Division B.  Jan. 8, 1940.  Suggestion of Error Overruled Feb. 19, 1940.)

[192 So. 857.  No. 33824.]

312

Green, Green & Jackson, of Jackson, and Herbert A. Mossler, of New York City, for appellant.

E. W. Stennett and Barnett, Jones & Barnett, all of Jackson, for appellee.

Argued orally by **Forrest B. Jackson**, for appellant, and by **Ross R. Barnett** and **E. W. Stennett**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The declaration in this case filed by the appellee against appellant alleged that on Saturday, October 15, 1938, a negro purchased from the store of appellant a pair of shoes. It was the duty of Little, the appellee, to deliver the shoes and to collect for the appellant. The shoes were not delivered, and complaint was made by the customer. The declaration alleged that Rabins, the manager of the store, said: "Little took them shoes," and that on the following Monday morning Rabins said in the presence of employees: "Little stole them shoes just like he did the purse a Saturday or two ago, and I am not going to put up with it;" and said to the cashier: "You take it out of his pay Saturday." Further allegations of the declaration are unnecessary to be detailed.

The appellant filed only a plea of the general issue.

The appellee subsequently filed an amendment by which he sued for $25,000 damages instead of $10,000 as originally demanded. Subsequently, by allegation, he amended his declaration by alleging repetitions of the al-

leged slander as showing malice in various forms. All of the defamatory matter was alleged to have been false.

The facts necessary to be stated are in substance as follows: The appellee had been employed by the appellant for some time before this incident occurred. His duties were to make deliveries of articles sold to customers and to collect from customers moneys due on account. For a short time prior to October 15, 1938, Rabins was employed as manager of the particular store in Jackson, Mississippi, which was known as Clark's Credit Clothiers. It is undisputed in this record that Rabins' duties were to manage the store, look after the sales, keep the stock of goods intact, employ and discharge the clerks and other employees necessary, and generally manage the store as and for the purpose of carrying on trade.

When the first witness, Mrs. Parker, was being examined, she testified that Rabins, the manager, received a telephone call on Monday morning in the store from a customer making a complaint about a pair of shoes not having been delivered, that he walked back real fast and said in a very loud and angry tone of voice: "Little stole them damn shoes, and I am going to take it out of his pay Saturday." This declaration of Rabins was made so that anyone in the store and on the street could have heard it. The sale of shoes was made on Saturday, October 15. Later in the day Monday she heard Rabins say to Little: "Little, you know damn well you stole them shoes, and I want Mrs. Reid to take it out of your pay Saturday night," to which Little replied: "I will tell you, and Mr. Beasley, and Mr. Sydeman, and all the rest of them I will not pay for the shoes, because I know nothing about them." She further testified that on the following day, Tuesday, they took the weekly inventory and found the shoes in the stock. The article was sold on credit, and was to go, with a suit of clothes, to a negro by the name of Chancery Zachary. When the inventory was taken by the sales slip, or invoice, or written memo-

randum, the shoes were found, and identified by means of marks on them which checked with the sales slip or memorandum of sale. At about this point, the appellant objected to proof of what was said on Monday morning for the reason that, as contended, the declaration was filed upon the first statement made on Saturday evening as basis of liability. After considerable debate between counsel, the Court held that the declaration counted upon both statements for liability and required appellee to elect as to which of the two slanderous charges he would stand upon as a basis of liability. Counsel for appellee announced that they would stand upon the second or Monday morning statement alleged in the declaration. Appellee had discovered that his facts did not fit. The objection of counsel was that this was a material change of the cause of action and that he would be prejudiced thereby. He had filed no special pleas. He moved for a mistrial of the case in order that he might be afforded an opportunity to shape the pleadings to meet the changed situation. Whereupon counsel for the appellee replied: "I will state now that we do not, and will not, object to any defense he wishes to offer; whether it is qualified privilege, or anything else; we are willing for him to defend on any theory that he chooses." By Mr. Jackson: "That's fair enough." By the Court: "I think the record is straight on that now. Bring in the jury."

Thereupon the evidence proceeded without further objection on this account. Mrs. Parker testified that the appellant owned about 160 stores in the United States, but was not certain about the sources of her information.

Another witness, an employee of the appellant, substantiated the statement as to the accusation made against Little by Rabins. Other witnesses testified that during the day Rabins repeated this language in substance, walked the floor, spoke loud, murmured to himself, and was talking about the shoes. Little testified in substance that when he came into the store on Monday

afternoon, Rabins said to him, in effect: ''You know you stole those damn shoes, and I am going to make you pay for them.'' He denied that any conversation occurred between himself and Rabins on the preceding Saturday night; said he delivered the package to the negro or to a relative, on Sunday morning, for him in the suburbs of the City of Jackson, that he delivered the package as it had been delivered to him at the wrapping counter; that he knew nothing about the shoes.

He testified as to the purse incident, that before Rabins was employed as manager, he had delivered a purse to a negro woman who lived in an apartment, and in effect said that he delivered it to the wrong woman, and took a receipt therefor, and he had understood that the manager had given the woman another purse.

Little testified that he remained in the employ of appellant for about a month and was discharged; that on Monday afternoon when he came to the store Rabins accused him of stealing the shoes and threatened to take it out of his pay, and he declined to consent thereto. Rabins discharged Mrs. Parker on Thursday, after this incident, and Rabins was discharged on the same day.

Pittman, as a witness for the appellee, testified that there was a telephone message (he didn't remember whether it was on Saturday or on Monday) about the missing shoes, and that Rabins said to him (Pittman) that Little took the shoes and he was going to make him pay for them.

The evidence for the appellee tended to show that it would only have taken a moment or two to find out if the shoes had actually been sent out or given to Little to deliver to the customer, but that Rabins made no such investigation.

All the evidence when the plaintiff closed his case as to the wealth of the appellant was that it owned six stores in Mississippi, and that Beasley was its district manager in Mississippi, and also in Alabama and in Louisiana. He did not know about the organizations of

the corporations. It was his opinion that there was a separate organization for each of these states. The employees made reports to the New York office of the corporation.

The appellant's evidence tended to show that the disturbance about the missing shoes and Little's connection therewith occurred on Saturday evening or night, and that at no time did Rabins, in the presence of the witnesses for the appellee, admit that any such language as was attributed to Rabins was uttered by him. His evidence fairly shows that he categorically denied using any such language. Appellant denied that there was any telephone call in which a complaint was made of the failure to deliver the shoes on Monday morning, or that any of the scenes depicted by the appellee's witnesses occurred. Rabins said that the inventory was taken on Monday morning, and about eleven o'clock it was discovered that the shoes were in the stock. Rabins had conferred early in the morning with Beasley, the district manager, as to the advisability of charging the shoes to Little. Beasley advised against that unless Little consented, and told Rabins if Little did consent, to charge him the regular price less thirty per cent, the discount allowed employees. On cross-examination, Rabins was asked this question: "And if he stole those shoes (referring to Little) he would have to untie the bundle and take them out?" A. "I didn't say he stole them. I never even entertained the thought he stole them." He admitted that he had assumed the name of Clark under certain circumstances in dealing with customers. Further on cross-examination, Rabins was asked if he was paid for coming from Dallas, Texas, to testify in the case, and his response was in this language: "If they (Sumner Stores, Inc.) hand me a thousand dollars, I will take it. I know they won't, but if they do, I will take it. I guarantee you that they have got more money than I have got." Q. "And they wouldn't miss a thousand dollars any more than you would a token?" A. "I guess

not. They are rated at two and a half million.'' Mr. Barnett: ''That's fine. Stand aside.''

Little offered evidence as to his good reputation for truthfulness and honesty. He further testified that Rabins did not like him, that he frequently nagged at him, and on one occasion when he had collected but a small amount for the day he told him he wasn't any better than a ten year old child.

The customer, Chancery Zachary, a negro, testified in rebuttal that the goods delivered for him to a relative by Little, did not come into his possession until Sunday morning, at which time he discovered that the shoes were missing, and that on Monday morning for the first time he telephoned, from the office where he was employed, the appellant's store, and made complaint as to the shoes not being delivered.

It will be observed from this testimony that the setting of the case as set out in the declaration on behalf of the plaintiff as to the evidence was changed from Saturday until Monday morning. All the evidence for the appellee tended to show or showed positively that the defamatory utterances were made on Monday morning; that no inventory was taken until Tuesday when the shoes were discovered. On the other hand, the appellant's evidence was to the effect that whatever was said was said by Rabins on Saturday and that on Monday morning the shoes were discovered in stock when the inventory was taken. Practically all the evidence was a conflict between employees of Clark's Credit Clothiers.

The court submitted the cause to the jury; and by the instruction voluntarily procured by the appellee, the burden of proving that the case was not one of qualified privilege, and that the slanderous utterance was the result of actual malice on the part of Rabins, the manager, were assumed by him.

The jury in the cause returned a verdict for $17,500. On a motion for a new trial, the president of the corporation was introduced in evidence and exhibited a written

contract with Rabins whereby it was stipulated that Rabins would not insult anybody or accuse anybody of crime. The president also testified that the corporations were separate entities, that the Mississippi corporation was a separate entity from the other corporations such as Louisiana and Alabama, and that the Mississippi corporation was not worth more than $69,000, and had only six stores in Mississippi, three in Jackson, one in Laurel, one in Meridian, and one in Vicksburg. On this motion for a new trial the appellee offered evidence that the members of the jury who tried the case were above the average jurors. The court below ordered a remittitur of $5,000, thereby reducing the amount of the judgment to $12,500, and the appellee assenting to the remittitur, a judgment was entered accordingly, and appeal is prosecuted here.

Stating the assignments of error presented by the appellant, we adopt our own order of considering them:

(1) It is argued that the court erred in not granting a mistrial when as it is alleged the appellee abandoned the Saturday night cause of action and relied upon that which we have detailed as having occurred on Monday morning. In the first place, there was no error committed by the lower court in this behalf. The declaration plainly alleged both the Saturday night slander and the Monday morning slander as bases of liability. The court properly required the appellee to elect upon which of the two slanders he would rely as a basis of liability. That election was made and it was agreed that the case would be proceeded with, with permission to the appellant to plead anything he desired as a defense to that action, to which appellant's counsel responded: ''That's fine,'' and the court thereby was led to believe that there was no further objection to the variance between the pleading and the averments of the declaration. It was not an amendment to the declaration requiring an order from the court and necessary to be spread upon the minutes. The appellant, in effect, did plead qualified

privilege, and the court gave him the benefit of that defense.

(2) It is contended that the defendant was entitled to a peremptory instruction because the alleged slander was uttered on a qualifiedly privileged occasion and there was no showing of actual malice on the part of this defendant. The appellee contends here that there was really no qualified privilege under the circumstances of this case. We do not deem it necessary for us to consider this argument of appellee, but will treat the case as one of qualified privilege because the appellee tried his case on that theory by his instructions to the jury and by his proof, and did not request the court to charge the jury peremptorily that there was no qualified privilege.

Each case of slander must be settled upon its own facts and circumstances. This court has several times held that although there is qualified privilege, that privilege may not be exercised to excess. As we view the case, we think there was no evidence upon which the jury could have found that Rabins had probable cause for accusing Little of stealing the shoes. He was hasty, intemperate, and, according to his own admissions, which we have set forth in the statement of facts, there was no basis for the charge no matter when he discovered that the shoes had not been delivered by Little. It would have been so easy for him to ascertain that they had never been wrapped and sent out; that they were still in the stock of merchandise. He selected Little as the offending party rather than the wrapping clerk or the salesman.

Insofar as the incident of Little's failure on another occasion to deliver a purse is concerned, the evidence, including Rabins' own evidence, shows that at the time it occurred Rabins did not consider it a basis for making the charge. Rabins charged Little with a crime as the jury has determined, which involved moral turpitude. We can imagine no case where the facts we have detailed are any more strongly shown, from which the jury believed that malice in fact existed; and such action of

Rabins could have only proceeded from a desire to do his employee, Little, injury. The argument that the accusations were made by Rabins in the heat of passion, and that he was justly angry because he resented the loss of the shoes, was for the jury. Where one exceeds the privilege, malice may be inferred therefrom. See Scott-Burr Stores Corporation v. Edgar, 181 Miss. 486, 177 So. 766; Alabama & Vicksburg Railway Company v. J. S. O. Brooks, 69 Miss. 168, 13 So. 847, 30 Am. St. Rep. 528; Kroger Grocery & Baking Co. v. Harpole, 175 Miss. 227, 166 So. 335.

But in this case the malice was made out sufficiently to go to the jury, although the case was one of qualified privilege and although the burden of proof was upon the appellee. Malice in fact was made out by the positive testimony of Rabins himself, who was the agent of the corporation, and who uttered the slander. All through the record, Rabins denied making the statement, denied that there was any basis for the charge, or that he entertained at any time any idea that Little had stolen the shoes. Rabins denied making the charge of theft; the jury found that he did make it. Then the jury was warranted in inferring malice in fact. By his own testimony he brought the case clearly within the rule announced in Louisiana Oil Corporation v. Renno, 173 Miss. 609, 157 So. 705, 98 A. L. R. 1296, and Reliance Manfacturing Co. v. Graham, 181 Miss. 549, 179 So. 341, and there is no conflict real or apparent between these cases and the case of Scott-Burr Stores Corporation v. Edgar, supra. In the latter case the Court was dealing with a clearly defined case of probable cause. All the evidence pointed to the fact that the actor in that case had probable cause to make the accusation complained of therein; not so in the Renno case, supra, or in the Graham case, or in the case at bar. Malice in fact was proved in this case if believed by the jury according to the definitions to be found in the Scott-Burr and Kroger cases, supra.

(3) It is urged that appellant was entitled to a per-

emptory instruction because Rabins, the manager, and Little were fellow servants, and in this case the doctrine of the fellow-servant rule applies. There is no merit in this contention. Rabins was the manager of that business. The only one there to direct Little was the employer for the corporation, employed by the corporation. And if we were to hold that the fellow-servant rule applied in this case, it would mean, in effect, that corporations would not be required to respond for damages or libel. Rabins' duty was to manage the store for the sale and delivery of goods to customers. He was the only person representing the corporation, the principal. It was his duty to keep the stock of goods intact, not to permit the goods to be lost or stolen. Upon the telephone message coming to him that the shoes in question were not delivered, it was his duty to see that the goods sold were delivered. When he made the declaration as the agent of the principal, he was acting clearly within the scope of his employment, and in the actual performance of the duty of his principal touching the matter in question. Doherty v. L. B. Price Mercantile Co., 132 Miss. 39, 95 So. 790; Rivers v. Yazoo & M. R. Co., 90 Miss. 196, 43 So. 471, 9 L. R. A. (N. S.), 931. In those cases it will be observed that this court has aligned itself with those jurisdictions which hold that a corporation may be held in damage for slander uttered and published by its agents. To hold that the master and servant doctrine would apply in such case would in effect be to hold that the employees working under a manager in full charge of a store would be helpless unless he, at the same time, was a managing officer of the corporation itself. We have found no case where corporations are held liable for slander or libel where the fellow-servant doctrine has been applied. There can be no sound reason in the light of the cases above cited in holding that the manager and the person employed by him for the corporation are fellow servants within the meaning of that rule. Rabins as manager had dominion over and complete control of

Little. No one else was there acting for the master. Rabins was not assisting in the delivery of a package, nor was he in anywise engaged with Little in the collection of accounts.

As to the evidence of the written contract between Rabins and the corporation offered on the motion for a new trial woven into the argument on this peremptory instruction, it is entirely beside the mark, and, of course, not be considered as a ground for peremptory instruction. This evidence was not offered before the jury. There is no showing as to why this contract could not have been introduced on the trial of the case before the jury.

(4) It is contended that the proof which we have detailed does not show the liability of the corporation on the ground of probable cause, but on the ground that Rabins uttered the slander with probable cause. We think we have already answered that in the discussion of the other points. This is clearly a case to go to the jury by Rabins' own admission. He himself never thought he had probable cause.

(5) It is next insisted that the court erred in admitting certain evidence delivered by Little in which he testified, at the time Rabins charged Little with stealing the shoes:

"I told Mr. Rabins I didn't know anything about the shoes, and I will tell you, and Mr. Beasley, and Mr. Sydeman, and all, I am not paying for them.

"Q. What did he say then? A. He said: Oh! Well, then, he says to me the collectors get credit for doing all dirty work; they will never suspect me about it; you will get blamed for it."

We think this evidence was competent. It went right directly to the issue of malice and the state of mind of Rabins. In other words, he told Little: I will not get the blame for it; I will throw the blame on you. We know of no reason why this evidence was not directed to the point in issue. It was not necessary to allege all the evi-

dence in the declaration, and it was also a part of the conversation in which Rabins accused Little of stealing the shoes.

Another witness testified that on an occasion prior to the day of the slanderous utterances Rabins said to him that Little "wasn't no damn good." This was some evidence of malice and was competent under the facts and circumstances of this case, and it was not necessary that all the evidence be alleged in the declaration.

The instructions when taken as a whole advised the jury as to the applicable law in his case. We will not commend them as models, but there is no reversible error when they are considered all together, and the jury were fully advised and could not have been misled by the inaccuracies pointed out in the briefs in the instructions.

(6) There was a motion for a new trial, one ground of which was that the verdict was excessive. There was evidence of slight value that the corporation owned many stores. Rabins said they were rated at two and one-half million. He threw this in on cross-examination. He was not examined further by counsel for the appellant. It stood in the record unimpeached, and uncontradicted. It was some evidence thereof, not conclusive of the wealth of the corporation.

Little testified that he was humiliated, that he could not eat, that he could not secure further employment, although he had diligently searched therefor. Two witnesses testified as to his former good reputation and as to his honesty. One of the witnesses seemed to say that this charge had not affected his good reputation.

The appellant urges that this verdict is so grossly excessive as to shock the conscience of the court; evinces that the jury was animated by passion and prejudice in returning so large a verdict; and insists that he is fortified by the fact that the trial judge had already so found by reducing the verdict to $12,500. He calls our attention to the Graham case where the verdict was $8,000, and was reduced by this court to $5,000. He argues that counsel

first engaged in the case thought $10,000 was adequate damage. He further says there is no such verdict as the one here which has been upheld. In this, we think counsel is mistaken. In the case of Interstate Co. v. Garnett, 154 Miss. 325, 122 So. 373, 756, 63 A. L. R. 1402, the jury found on an issue of fact that the manager of a lunch room had said of the appellee: "G—— d—— you, you G—— d—— bitches; what the H—l you doing here?"

The jury found a verdict in that case for $25,000. This Court reduced the verdict to $15,000, and in reducing it called attention to an instruction authorizing the jury to return a verdict for appellee in the sum of $25,000, the amount sued for in the declaration. And insofar as the compensatory damages in that case were concerned, there was not so much evidence as is in this case. If the judges which are now considering the case had been on the jury, they most probably would not have returned so large a verdict. The trial judge, as well as the jury, heard the evidence, saw the demeanor of the witnesses as they testified, and the trial judge concluded on the motion for a new trial that $12,500 was a fair verdict. We cannot believe that the trial judge was animated by prejudice and passion. In the trial of the case and disposition of the issue, he appeared to be fair. In this situation and under all the circumstances of this case, wherefor the jury had in its discretion the power to assess punitive damages, we cannot plant ourselves upon any firm basis for a further reduction of the verdict in this case. In the light of the Garnett case, supra, compared with it, we cannot say with that degree of confidence necessary that the verdict should be further reduced. In the one case the woman was charged with unchastity; in the other the man was charged with dishonesty. His business was that of a collector of money. The probability is that as a result of that false charge as found by the jury made against Little, men who desire an employee in that capacity in which Little served would prefer another person. The nature and enormity

of the offense must be taken into account in passing upon this question as it would be in fixing punishment in a case of criminal libel in fixing the amount of punitive damages. There is no hard and fast rule by which a jury or court is governed as to the assessment of punitive damages.

We find no reversible error herein.

Affirmed.