TIPPS TOOL CO., et al. *v.* HOLIFIELD.

Nov. 9, 1953

No. 38850 42 Adv. S. 21 67 So. 2d 609

672.

*Beard, Pack & Ratcliff*, Laurel, for appellants.

674

*Collins, Collins & Brown,* Laurel, for appellee.

KYLE, J.

Lavon Holifield, as plaintiff, brought this action in the Circuit Court of Jones County against Tipps Tool Company, a corporation, and A. L. Lowery, defendants, to recover damages for an alleged slander. The trial resulted in a verdict and judgment for the plaintiff in the sum of $10,000 against both defendants. From that judgment the defendants prosecute this appeal.

The appellant, Tipps Tool Company, owned and operated a large foundry and tool works business in the City of Laurel. A. L. Lowery was the appellant's welding and fabricating foreman. The company employed between 40 and 50 men. The appellee, Lavon Holifield, on January 28, 1952, was employed by the Tipps Tool Company as a truck driver and welder's helper. The appellee was 21 years of age and had a wife and one child two years of age. He had been employed by the Tipps Tool Company for a period of approximately 18 months, and earned $1.05 per hour.

The plaintiff alleged in his declaration that on January 28, 1952, around noon of that day, while he was engaged in the performance of his duties as an employee of plaintiff alleged that A. L. Lowery then took the plaintiff into custody, and along with Mr. Holston and in the presence of all the employees of the company, who had ceased work during the lunch hour, marched the plaintiff to the place where the plaintiff's car was parked, and lifting up the trunk of the plaintiff's car said in the presence and hearing of Holston and other employees: "If every one of them son of a bitches would get an axe like that, look where we would be." The plaintiff alleged that Lowery then put the plaintiff in a pickup truck belonging to the company, and along with Holston took the plaintiff to the plaintiff's home and proceeded to search his premises; that Lowery and Holston went into the plaintiff's garage, and picked up two buckets of dried-up paint and threw them in the back of the pickup truck; and that Lowery then took the plaintiff back to the office of the company, where Jack McDill resumed his questioning of the plaintiff. The plaintiff charged that Jack McDill asked the plaintiff in a malicious, violent, rude and discourteous manner, "What did you do with the gauges and torches and things that you stole out there? * * * Where did you put them, that is what I want to know, where are those gauges and things?" The plaintiff al-

leged that other similar charges were made against him by Lowery, and that the interview was finally ended by Lowery saying to him, in a malicious and accusing manner, "I am going to give you your time for stealing."

The plaintiff alleged that the above slanderous statements were spoken to him by Jack McDill and A. L. Lowery without any basis whatsoever for suspecting him of the Tipps Tool Company, he was told to report to the office of the company, and when he reported to the office there were present in the office the defendant A. L. Lowery, who was the welding and fabricating foreman of the company, Bob Sigler, assistant to the general manager, S. W. Holston, construction foreman, Leroy Hodge, an employee who had delivered the message to the plaintiff requesting him to report to the office, and Jack McDill, the attorney for Tipps Tool Company, that there were also present other employees of the company and other persons unknown to the plaintiff; that immediately after the plaintiff entered the office, Jack McDill addressed the plaintiff in a violent, rude, and discourteous manner as follows, "What were you doing stealing?" The plaintiff alleged that he was shocked at the remark made to him by the company's attorney, and said, "I haven't stole anything." Jack McDill then said, "Well, what about that paint you got?" The plaintiff stated that he had some paint at his house but that he had not stolen it, and had never stolen anything in his life. The plaintiff alleged that the defendant A. L. Lowery then spoke to the plaintiff in a malicious, violent, rude and discourteous manner as follows: "We ought to go out to his house (meaning plaintiff's home) and see what he (meaning plaintiff) has got. We want to catch who has been doing the stealing around here and we are going to your house and take a look. We have been missing gauges and hoses and tools and you've been getting them. And you've got a whole damn cutting rig too. If you haven't got them at your house you've disposed of them."

The various crimes that he was charged with, and without any probable cause; and that the language thus maliciously spoken was spoken with the intent to injure the plaintiff in his good name, fame and reputation; that all of said charges were untrue; and that as a result of said charges the plaintiff had been injured and damaged in his good name, fame and reputation.

The defendants in their answer denied the allegations of the declaration concerning the slanderous statements made by McDill and Lowery; and the defendants denied that the plaintiff was taken into custody or treated discourteously during the inquiry, or that the plaintiff was accused of stealing. The defendants averred the truth to be that the plaintiff was questioned about items which he admitted taking, and that Lowery and Holston accompanied the plaintiff to his home at the plaintiff's request to receive back the paint that the plaintiff had taken. The defendants later filed an amendment to their answer, in which they averred that any statements made by them during their interviews with the plaintiff at the times and places mentioned in the declaration were privileged communications spoken upon a privileged occasion; that the statements made by them were made in the course of an investigation of reported thefts, upon probable cause, in good faith, and without malice toward the plaintiff, and to persons having a common interest; and that the defendants were not liable therefor.

The plaintiff, testifying in his own behalf, related the facts concerning the above mentioned interviews as alleged in his declaration. The plaintiff testified that the slanderous statements alleged to have been made by McDill and Lowery were made by them in substantially the same language as set out in the declaration. The plaintiff stated that when he returned to the office with Lowery and Holston, after their visit to his home, McDill said to him, "What did you do with the gauges and torches and things you stole out there? * * * I want

to know where you put them," and that the plaintiff again told him that he had not stolen any of them. The plaintiff testified that Lowery then asked him, "What about that 20-ton jack you got, what did you do with that?" The plaintiff testified that the axe and a 5-gallon oil can found in his automobile while the investigation was in progress belonged to his brother, and that he had borrowed it from his brother; and that the 5-gallon paint cans found at his home, with small quantities of paint in them, were there when he moved into the house a short time before the investigation was made. The plaintiff testified that there were several women in the office within hearing distance when the charges were made against him by McDill and Lowery, and that there were employees in the yard within hearing distance when Lowery opened the trunk of his automobile and accused him of stealing the axe. He denied that he had stolen the axe or the 5-gallon can, or that he had admitted stealing the same at any time.

J. J. Blackledge was called as a witness on behalf of the plaintiff, and stated that he was employed by Tipps Tool Company on January 28, 1952, and that while he was working on his car, which was parked near the blacksmith shop not far from the plaintiff's car, he saw a group of people crowded around the plaintiff's car. Blackledge stated that Mr. Lowery passed him while he was working on his car, and that he asked Mr. Lowery, "What's the matter, did somebody get killed or something?" Lowery said, "No, that darned Lavon Holifield stole some stuff from Tipps Tool Company and we found it there in his car." Lewis Holifield, the plaintiff's brother, testified that he had let Lavon have the axe and the 5-gallon oil can a short time before the investigation was made. The plaintiff's wife, Mrs. Lavon Holifield, testified that when her husband arrived at her home with Lowery and Holston, who proceeded to search the premises, she asked her husband what was wrong, and before

he could say anything Lowery said, "He stole everything we got over there * * * We come over here to get it." Mrs. Holifield also stated that the axe that the plaintiff had was an axe that his brother had loaned to him, and that the paint cans which Lowery and Holston carried back to town with them were on the premises at the time she and her husband moved in. Several witnesses testified that the plaintiff's general reputation for honesty and integrity in the community in which he lived prior to January 28, 1952, was good.

Jack McDill was called as the first witness for the defendant. He stated that he was called to the office of Tipps Tool Company on January 28, 1952, at the instance of Bob Sigler, the assistant general manager, for the purpose of assisting in an inquiry concerning the loss of certain tools and equipment belonging to the company, including an axe that Lavon Holifield was reported to have placed in the back of his automobile. McDill stated that he questioned Holifield in the private office of the company, and that Mr. Lowery, Mr. Sigler and Mr. Holston were present. He stated that he told Holifield that he was a lawyer representing Tipps Tool Company and he wanted to ask him some questions; that he did not accuse Holifield of stealing. He asked Holifield what he intended to do with the axe that he had placed in his automobile, and Holifield replied that he was going to take it and use it around his home where he had some cleaning up to do. He asked Holifield whether he had permission to take it out there, and Holifield said "No." McDill stated that Holifield then said, "That's the only thing I have ever taken, and the first thing I have ever done wrong." He then asked Holifield about an oil can found in his automobile; and Holifield said that Leroy Hodge had put the oil can in his automobile, and that he was going to drop it on the road and Leroy was going to pick it up. He then asked Holifield about the paint that he had—he had been informed that Holifield had taken some

paint. Holifield replied that he had taken it to his house to use, but he thought it had been thrown away. He asked Holifield whether he would mind Albert Lowery going out there and getting the paint, and Holifield said, "No. * * * I want them to come out to my house and look around, be satisfied that I didn't get anything." McDill denied that he had spoken to the plaintiff at any time in a harsh, rude, angry or threatening manner. He stated that after Holifield, Lowery and Holston had returned from the trip that they made to Holifield's home, he asked Holifield if he did not think it best for himself and the company for him to leave. McDill stated that he saw the oil can and axe in the back of Holifield's automobile, and that the axe was a single blade axe, and that the oil can was a red 5-gallon can with the Standard Oil Company name on it. McDill denied that he ever used the word "steal" in the course of his questioning of Holifield. He also stated that Albert Lowery did not speak to Holifield in a violent, rude, malicious or discourteous manner. He admitted, however, that he and Lowery questioned Holifield about certain other tools and equipment which were reported to be missing.

Albert Lowery testified that it was his duty to keep up with the tools and other property of the company; that while he was standing at the middle door of the warehouse on January 28 he saw Holifield take a comparatively new axe off the truck and put it in the back of his car which was parked under the shed of the wash house, and that he reported the incident to Mr. Sigler, the assistant general manager. Mr. Sigler then called McDill, the company's attorney. Lowery stated that there were other tools and other equipment that were missing. After McDill arrived at the office Lowery said that he and McDill, Sigler and Holston went to Holifield's automobile and lifted the hood of the storage compartment and saw the axe and a 5-gallon can of gasoline with the words "Standard Oil Company" stenciled on

the side in the storage compartment of the automobile. Lowery denied that he had made the statements to Holifield that Holifield alleged that he had made, and he denied that McDill had accused Holifield of stealing. Lowery denied that he had seen J. J. Blackledge on the premises of Tipps Tool Company at any time during that day. He also denied that he had made the statement to Holifield's wife that Holifield "has stolen everything we have got up there." Lowery stated that there was a 20-ton jack missing from the Tipps Tool Company at the time the investigation was made, and that there were hoses and gauges missing, and also a cutting rig. He did not accuse Holifield of taking them. He admitted that he asked Holifield whether he knew anything about the 20-ton jack, and whether he had a complete cutting rig at his house, and Holifield said that he did not.

S. W. Holston, the construction foreman, corroborated the statements made by McDill and Lowery concerning the interview that they had with Holifield in the office. He also denied that Lowery had made the statement testified to by Holifield's wife to the effect that Holifield had stolen "everything we got over there." R. R. Sigler testified that Lowery had reported to him on January 28 that there was an axe in Holifield's car that belonged to the company, and that he felt that some action should be taken about the matter. Sigler stated that he then called McDill and requested him to come to the office. He stated that he was present when McDill, Lowery and Holston inspected the automobile and saw the single bladed axe and the 5-gallon oil can in the car; but he was not present during the time that McDill was questioning Holifield about the matter in the office. George Hodge testified that he was with Lavon Holifield when Lavon Holifield got the axe that was found in the automobile. He stated that Lavon picked the axe up off of the rolling table at the machine shop and put it in his car, and that he told Lavon to put it down, that Mr. Lowery was watching him.

He stated that the axe was a single blade axe and had a straight handle. He stated that Mr. Lowery asked him about the axe and he told Mr. Lowery that Lavon got the axe.

The appellants' attorneys have argued several points as grounds for reversal of the judgment of the lower court.

The first point argued by the appellants' attorney is that the court erred in overruling the defendants' motion to quash the panel of jurors and to declare a mistrial, when one of the jurors was excused because of his wife's illness after the jury had been accepted. But in view of the fact that the judgment appealed from must be reversed on other grounds, it is not necessary for us to consider that point.

The next point argued by the appellants' attorneys is that the court erred in sustaining the appellee's objection to evidence sought to be introduced for the purpose of showing that other tools and equipment had been missing from the premises of the Tipps Tool Company prior to January 28, 1952, and that these losses had not been accounted for. The first objection was interposed when McDill undertook to state that other equipment, in addition to the axe and the oil can, had been reported as missing; and the second objection was made when Bob Sigler, the assistant to the general manager, was asked whether other tools and equipment had been reported as missing. The appellants contend that the evidence to which the appellee interposed objections should have been admitted for the purpose of showing probable cause for the statements alleged to have been made to the plaintiff concerning the axe and the oil can which were found in the back of the plaintiff's automobile and concerning the other personal property about which the plaintiff was questioned. We think that the evidence was competent for the purpose of showing probable cause for the investigation, and for the purpose of showing good faith on

the part of the supervisory employees of the company in making the statements which they were alleged to have made during the progress of the investigation. But the errors complained of had no effect upon the trial of the case, for the reason that the record shows that the court later admitted the testimony concerning other tools and equipment that were missing.

It is next argued on behalf of the appellants that the court erred in overruling the appellants' objection to the testimony of the witness Blackledge concerning the slanderous statement alleged to have been made to him by A. L. Lowery, while Blackledge was working on his car near the wash shed to the effect that, "that darn Lavon Holifield stole some stuff from Tipps Tool Company and we found it in his car," and in overruling the appellants' objection to the testimony of Mrs. Lavon Holifield, to the effect that when she asked her husband what was wrong, Lowery said to her, "He stole everything we got over there. * * * We come out here to get it." Objection was made to the admission of each of these statements on the ground that there were no allegations in the declaration that such words had been spoken at any time to any one; and the appellants say that the rule is well settled that the declaration must charge the alleged defamatory statements, or evidence to prove that such statements have been made is inadmissible.

But we think that the testimony referred to was competent for the purpose of showing malice. The plaintiff had charged in his declaration that the statements made by Lowery on the occasion referred to in the declaration had been made maliciously, without probable cause, and with the intent to injure the plaintiff in his good name. The appellants in their answer had averred that whatever statements had been made by McDill and Lowery to the plaintiff on occasion had been made while an investigation was under way for the purpose of determining the facts concerning reported thefts; and that such state-

ments had been made in good faith, and without malice toward the plaintiff, and to persons having a common interest in the matters which were being investigated; and that the defendants were not liable in an action of slander on account of such statements. If Lowery made the statements, which Blackledge and Mrs. Holifield testified that he did make, proof that such statements had been made was admissible for the purpose of showing malice.

 The rule relating to the admission of other defamatory statements, or words of similar import, which are not specifically charged in the declaration, is stated in 33 Am. Jur., p. 253, Libel and Slander, par. 269, as follows: "Although plaintiff's recovery is necessarily limited to the damages accruing from the libel or slander set forth in his complaint, it appears to be definitely settled that evidence of other defamations published of and concerning him by the defendant either before or after the filing of the suit is admissible for the purpose of showing malice."

 "Proof that the defamatory statements declared on, or words of similar import, had been spoken or written at other times, is admissible to show malice, whether such statements were made before those for which damages are sought or afterwards, even after commencement of suit." Newell on Slander and Libel, Fourth Edition, Sec. 287. See also, Scott-Burr Stores Corporation, et al. v. Edgar, 181 Miss. 486, 177 So. 766; Sumner Stores of Miss., Inc. v. Little, 187 Miss. 310, 192 So. 857.

It is next argued on behalf of the appellants that the court erred in permitting the introduction, over the appellants' objection, of the financial statement of Tipps Tool Company, which showed the financial condition of the company on December 31, 1951. But there was no error in the court's action in admitting the financial statement showing the financial condition of the corporation on December 31, 1951. It is well settled in this

state that in an action of this kind the financial worth and condition of a corporation, at or about the time the defamation complained of was published, may be proved for the purpose of furnishing a proper criterion for assessing the amount of punitive damages to be allowed in case recovery of such damages is justified; and proof of the financial worth of one of the joint defendants, where there are two or more joint defendants, may be considered by the jury in determining the amount of punitive damages to be awarded in such case. Bell v. Morrison, 27 Miss. 68; Storm, et al. v. Green, 51 Miss. 103; Interstate Company, et al. v. Garnett, 154 Miss. 325, 122 So. 373. See also, Montgomery Ward and Company, Inc., et al. v. Skinner, 200 Miss. 44, 25 So. 2d 572.

It is next argued by the appellants' attorneys that the court erred in permitting the plaintiff to introduce in evidence a letter received by the plaintiff from the Mississippi Employment Security Commission concerning the disallowance of the plaintiff's claim for unemployment compensation. The letter was dated March 10, 1952, and was signed by J. M. Maxwell, Jr., Claims Examiner. The reason stated in the letter for the disallowance of the plaintiff's claim was: "Discharged for misconduct connected with work. (Sec. 5b)." The letter also contained the following statement: "You are discharged for allegedly misappropriating property of your employer. You, therefore, are assessed a disqualification against your claim." The plaintiff admitted on cross-examination that when he made application to the employment office for unemployment compensation, he was asked why he was no longer employed by the Tipps Tool Company, and that he stated in answer to the question that he had been fired. He stated that he did not tell the office helper why he had been fired.

The appellants contend that the testimony concerning the above mentioned letter was incompetent, and that the court erred in admitting the letter in evidence.

We think that the court erred in admitting the letter in evidence, for the reason that its contents were mere hearsay. It was not shown that the appellants had furnished any information of any kind to the Employment Security Commission concerning the plaintiff's alleged misconduct or the reasons for his discharge, or that the action of the Commission was based upon any statement made by the appellants in reference to the plaintiff's alleged misconduct. But, even though we think that the court erred in admitting the letter in evidence, we would not reverse the judgment for the plaintiff on that account. Such error, in our opinion, was harmless.

The next point argued by the appellants' attorneys is that the court erred in overruling the appellants' motion for a directed verdict at the conclusion of the plaintiff's testimony and in refusing to grant the appellants' request for a peremptory instruction at the close of the entire case. But we think that there was no error in the action of the court in overruling the appellants' motion for a directed verdict or in refusing to grant the peremptory instruction. The plaintiff testified that the words charged in the declaration were spoken by McDill and Lowery in the presence of other persons, as alleged in the declaration, and the plaintiff's testimony as to the utterance of the charges was supported in part by the testimony of Leroy Hodge. Blackledge and Mrs. Holifield testified that words of similar import were spoken by Lowery at other times. It is true that the testimony of these witnesses was contradicted by the testimony of McDill, Lowery and Holston; but this conflict in the testimony made an issue of fact for the jury to decide.

McDill testified that the plaintiff admitted that he had taken the axe; and Lowery testified that he had seen the plaintiff take the axe. But no proof was offered to show that the plaintiff had been connected in any way with the disappearance of the gauges and the torches or the 20-ton jack, which the plaintiff testified that McDill and

Lowery had accused him of taking. If the jury believed that McDill and Lowery had falsely accused the plaintiff of taking the gauges and the torches and the 20-ton jack, without reasonable grounds for believing such charges to be true, and that Lowery had spoken slanderous words of similar import concerning the plaintiff to Blackledge and Mrs. Holifield as testified to by them, the jury might have reasonably concluded that malice existed. Gardner v. Standard Oil Company, et al., 179 Miss. 176, 175 So. 203; Louisiana Oil Corporation, et al. v. Renno, 173 Miss. 609, 157 So. 705; Sumner Stores of Miss., Inc. v. Little, 187 Miss. 310, 192 So. 857.

We think that the evidence was sufficient to justify the court in submitting the question of the appellants' liability to the jury.

The appellants' next contention is that the court erred in refusing to grant the appellants' Instruction No. 13. But the subject matter of that instruction was fully covered in other instructions granted to the appellants, and the refusal of the court to grant the instruction did not constitute reversible error.

The appellants also complain of the action of the court in refusing to grant the appellants' Instruction No. 14. In that instruction the court was requested to instruct the jury that even if they believed that the defendants, their agents or attorney "used strong words in describing the plaintiff's conduct, or that the expressions were angry and intemperate, you are still not warranted in believing that he or they were actuated by malicious motives," etc. The instruction as drawn was properly refused. The rule sought to be incorporated in the instruction is stated in Newell on Slander and Libel, Fourth Ed., Sec. 292, as follows: "If the defendant honestly believed the plaintiff's conduct to be such as he described it, the mere fact that he used strong words in describing it is no evidence of malice. The fact that the expressions are angry and intemperate is not enough; the proof must go further

and show that they are malicious." The requested instruction would perhaps have been proper, if it had been couched in the language of the above quoted text. But the instruction in the form requested was properly refused.

We come now to consider the appellants' objection to the plaintiff's Instruction No. 2 which is as follows:

"The court instructs the jury for the plaintiff, that the statement made by one person of another that he has stolen anything is slanderous per se, and is actionable, if spoken in the presence of one or more persons, and if you believe from a preponderance of the evidence in this case that such a statement was spoken of plaintiff by the defendants and in the presence of one or more persons, then you must find for the plaintiff."

We think that the granting of the above mentioned instruction constituted reversible error. The case made by the plaintiff's proof was a case of qualified privilege; and the instruction did not embody a correct statement of the law applicable in cases of that kind. "Malice is the gist—that is, the main point whereon rests an action for libel or slander." Newell on Slander and Libel, Fourth Ed., Sec. 278, p. 316. Where the occasion is one of qualified privilege malice is not implied; and the burden of proving the existence of malice is cast upon the person claiming to have been defamed. Scott-Burr Stores Corporation v. Edgar, supra; Louisiana Oil Corp. v. Renno, 173 Miss. 609, 157 So. 705; Gardner v. Standard Oil Co., 179 Miss. 176, 175 So. 203; Missouri Pacific Transport Co. v. Beard, 179 Miss. 764, 176 So. 156. In the above mentioned instruction malice was not referred to. The jury was simply told that if they believed that McDill and Lowery made the statements alleged to have been made by them in the plaintiff's declaration in the presence of one or more persons, the jury must return a verdict for the plaintiff. The instruction meant that the jury might disregard the question of malice en-

tirely; that they might disregard the fact that the occasion on which the statements were uttered was an occasion of qualified privilege; and that they might disregard the question as to the truth or falsity of the statements. The instruction was such as to mislead the jury entirely as to the law of the case; and it cannot be said that the error was cured by the granting of other instructions to the defendants.

The appellants also contend that the amount of the verdict is excessive. But, inasmuch as the judgment of the lower court must be reversed and a new trial awarded on account of the error committed by the court in granting the plaintiff's Instruction No. 2, it is not necessary that we consider the question as to whether the amount of the verdict is excessive.

For the reasons stated above, the judgment of the lower court is reversed and the cause is remanded.

Reversed and remanded.

*McGehee, C. J.,* and *Lee, Holmes* and *Lotterhos, JJ.,* concur.